ERNEST L. BUMGARNER AND GEORGE GRIFFIN v. A. CLYDE TOMBLIN AND
WIFE, JANET L. TOMBLIN

No. 8229SC550

(Filed 6 September 1983)

1. **Contracts § 25.1; Frauds, Statute of § 6.1— breach of contract—mismanagement of duty to finance land purchase—summary judgment improper—statute of frauds not applying**

    In a breach of contract action where plaintiffs alleged lost profits from potential sales of a parcel of land, jointly owned by plaintiffs and one defendant, due to the defendant's mismanagement of his alleged duty to finance the land purchase, the trial court erred in granting summary judgment for defendant since defendant denied ever having such a contractual duty and since there was another genuine issue as to who was responsible for the lost profits. The statute of frauds, G.S. 22-2, does not defeat plaintiffs' claim for contract damages since they did not seek to enforce an oral contract by defendant to sell them land, instead, they sought to enforce an alleged promise by defendant to take care of debt payments and to achieve a profitable resale.

2. **Fraud § 12— forecast of evidence—sufficient to survive summary judgment motion**

    Plaintiffs forecast sufficient evidence of constructive fraud to survive a motion for summary judgment where the evidence tended to show that defendant had legal title to land basically owned, in part, by plaintiffs; defendant promised to take care of the financing until they could turn a profit; defendant and plaintiffs agreed to hold the land for resale; because of defendant's legal skills, proximity to the land, and knowledge of real estate, the plaintiffs reposed a special confidence in him; and plaintiffs alleged he turned away prospective buyers, resulting in eventual foreclosure and loss of profits.

3. **Contracts § 4.1; Fraud § 12— breach of contract action—failure to share profits—valuable consideration supplied**

    In a breach of contract action where plaintiffs alleged defendant failed to share the profits from sale of a parcel of land equally owned by defendant and plaintiffs, the trial court erred in entering summary judgment for defendant since there was a genuine issue as to whether full payment had been paid and since plaintiff's allegation that he devoted his time and knowledge as a real estate entrepreneur in seeking out prospective buyers was consideration enough to support any promise by defendant to manage and help sell the property.

4. **Accord and Satisfaction § 1— insufficiency of evidence—summary judgment improper**

    Where defendant and plaintiff jointly owned a piece of property and where defendant stated that his deed of 43 acres of the property to plaintiff served as an accord and satisfaction but plaintiff specifically denied agreeing to take the 43 acres in lieu of his share of the profits, his denial created a gen-

uine issue of material fact as to whether an accord or modification or novation occurred, and summary judgment was improperly entered for defendant.

**5. Fraud § 13— summary judgment on claim for punitive damages improperly entered**

  In an action in which plaintiffs alleged constructive fraud in that defendant abused a fiduciary responsibility in the sale of land, the trial court erred in entering summary judgment for defendant on plaintiffs' cause of action asking for punitive damages.

**6. Limitation of Actions § 4.6; Quasi Contracts and Restitution § 5— quasi contract— sufficiency of evidence—statute of limitations**

  Defendant alleged sufficient evidence to raise a jury question in quasi contract where defendant made payments totaling around $20,000.00 on a $44,619.00 note which was made only in defendant's name although it was a refinancing of notes both one of the plaintiffs and defendant had been liable on. However, as to the payments made more that three years before defendant filed his counterclaim seeking reimbursement, the statute of limitations, G.S. 1-52(1), applied.

APPEAL by plaintiffs from *Owens, Judge.* Order entered 21 December 1981 in Superior Court, RUTHERFORD County. Heard in the Court of Appeals 15 April 1983.

Plaintiffs brought this action seeking damages for breach of contract and fraud. Defendants counterclaimed for contribution from plaintiff Griffin on a note for which they were jointly liable. The pleadings and depositions tended to show the following allegations and facts.

On 9 July 1973 the two plaintiffs and the defendant A. Clyde Tomblin each contributed $5,611.50 to the down payment on property located in Duncan's Creek Township. Title to the land was put in the name of the defendants, but defendant Tomblins agree that each of the plaintiffs owned an undivided one-third share. The land was bought for the purpose of reselling it at a profit, and title was placed in defendants to facilitate sales. Plaintiffs allege that defendants also agreed to handle all payments and financing on the land and the indebtedness until the land could be sold or developed. The parties formulated their oral contractual agreement in vague terms during several conversations in different places.

The plaintiffs and defendants executed a deed of trust to Foy and Mae Biggerstaff in 1973 when they purchased the land from the Biggerstaffs. They subsequently executed new deeds of trust

to the Federal Land Bank for about $54,000 and to Foy and Mae Biggerstaff for $37,000, and the previous deed of trust was cancelled. On 16 April 1976 defendants deeded a one-third undivided interest in the land to each of the plaintiffs. By 10 February 1978 neither plaintiffs nor defendants had made any payments, so the trustee of the deed of trust to the Biggerstaffs commenced foreclosure. In April of 1978 the land was sold at Tomblin's suggestion to Compass Corporation, wholly owned by Bumgarner, which executed a deed of trust to the Biggerstaffs for $47,362.12. One year later Compass Corporation conveyed the land to George Holland. None of the parties realized a profit from the Duncan's Creek Township land; both sides blamed the other for failure to sell the land.

The plaintiffs and defendants orally agreed to purchase another parcel of land located in Morgan Township, based on the same understanding they had regarding the Duncan's Creek Township land. They acquired the deed on 9 August 1973, and title was once again solely in the defendants' name to facilitate sales. A bank loan provided the purchase price of $18,389.43. Soon thereafter, 118 acres of the Morgan Township land were sold to Scott Peek, representing Florilina Corporation, for $59,350.02. The plaintiffs and the defendant A. Clyde Tomblin listed their profit for tax purposes as $13,653.53 apiece from the sale to Peek. Plaintiff Bumgarner received $6,920.24 from defendants for his share of the proceeds. Plaintiff Griffin denies receiving any share of the sale proceeds, although he did get $6,180.60 from Tomblin.

On 30 October 1978, defendants deeded 43 acres of the remaining Morgan Township land to plaintiff Bumgarner. Bumgarner needed money to pay a pressing debt, so he had asked Tomblin to encumber part of the land to raise the necessary sum. Tomblin conveyed the 43 acres to Bumgarner, thereby permitting Bumgarner to obtain a deed of trust on the land conveyed. Because Bumgarner was out of town and his wife handled the transaction through a power of attorney without knowing what was happening, he claims he did not learn for months that the 43 acres belonged to him and he denies accepting the deed for the allegedly inferior land. Defendants maintain that the deed to Bumgarner disposed of his remaining interest in the Morgan Township land.

Early in 1979 the plaintiffs discovered that the defendants had conveyed parts of the remaining land to various individuals. The plaintiffs claim these sales were made without their knowledge or approval, and that the sales disproportionately reduced the value of the remaining land. Defendants used the proceeds to pay Monroe Green for the costs of surveying the land, and to make payments on a deed of trust executed to secure loans to Gricon, Inc.

Gricon, Inc. had borrowed funds to begin operations on the basis of notes signed together by plaintiff Griffin and defendant A. Clyde Tomblin. In 1973 Gricon, Inc. ceased doing business. Griffin and Tomblin agreed in 1975 to consolidate the Gricon notes into a single $44,619 note in the Tomblins' name only. The defendants have been making payments on this note and refuse to give Griffin his share of the remaining Morgan Township land until Griffin pays them his share of the note.

Both sides moved for summary judgment after depositions were taken. The trial court granted defendant Janet L. Tomblin's motion for summary judgment as to all claims against her. Defendant A. Clyde Tomblin's motion for summary judgment was granted with respect to plaintiffs' first and third causes of action. The first cause of action alleged breach of contract and fraud damages concerning the Duncan's Creek Township land. The third cause of action asked for punitive damages. The trial court also granted A. Clyde Tomblin's motion for summary judgment as to the second cause of action by plaintiff Bumgarner, but denied summary judgment against plaintiff Griffin on the second cause of action. The second cause of action alleged breach of contract and fraud concerning the Morgan Township property. Finally, plaintiff Griffin's motion for summary judgment on the defendants' counterclaim was denied. Plaintiffs appealed the summary judgment involving defendant A. Clyde Tomblin, and subsequent references to "defendant" in this opinion shall mean only A. Clyde Tomblin.

*Yelton, Farfour & McCartney, by Charles E. McCartney, Jr., for plaintiff appellants.*

*Robert W. Wolf and Hamrick, Bowen, Nanney & Dalton, by Louis W. Nanney, Jr., for defendant appellees.*

PHILLIPS, Judge.

A final judgment on all the claims of all the parties has not been entered. Nor will the plaintiffs suffer loss of a substantial right without an immediate appeal. Therefore, plaintiffs' appeal is interlocutory and premature under Rule 54(b), N.C. Rules of Civ. Proc. But in our view the administration of justice will be served by us treating the appeal as a writ of certiorari in accordance with Rule 21(a), N.C. Rules App. Proc.

[1] Plaintiffs contend the trial court erred in granting defendant's summary judgment motion on the claims involving the Duncan's Creek Township land. Summary judgment lies where a claim can be resolved as a matter of law and no genuine issue of material fact exists. Plaintiffs claim that the defendant agreed to take care of the remaining indebtedness on the land through long term financing, negotiations with the sellers, and sales of timber from the property until it could be developed. Defendant maintains that the parties agreed to share the liabilities as well as the profits of the land. The basis for a breach of contract recovery is plaintiff's lost profits from potential sales of the land due to defendant's mismanagement of his alleged duty to finance the land purchase. Since defendant denies ever having such a contractual duty, a genuine issue of material fact exists. Moreover, each side accuses the other of stymieing sales to potential buyers. These accusations raise a genuine issue as to the material fact of who was responsible for the lost profits. The plaintiffs' first cause of action depends on the terms of a disputed oral contract and whether either party frustrated performance of the contract. These issues of credibility should be resolved by a jury.

Nor does the statute of frauds, G.S. 22-2, defeat plaintiffs' claim for contract damages regarding the Duncan's Creek Township land. Plaintiffs do not seek to enforce an oral contract by defendant to sell them land; instead, they seek to enforce an alleged promise by defendant to take care of debt payments and to achieve a profitable resale. The North Carolina Supreme Court has declared that "the statute [of frauds] has no application to those contracts whereby two persons agreed to purchase land, either generally or as a single venture, for the purpose of reselling the same at a profit and sharing the same between them."

*Newby v. Atlantic Coast Realty Co.*, 182 N.C. 34, 38, 108 S.E. 323, 325 (1921).

For the same reason, the statute of frauds does not bar the claim for contract damages regarding the Morgan Township land. The breach of contract alleged in the second cause of action relates to defendant's failure to divide the profits as agreed. The statute of frauds clearly does not apply to an oral contract to divide profits from the sale of land. *Whitley v. O'Neal*, 5 N.C. App. 136, 168 S.E. 2d 6 (1969).

[2] The plaintiffs' claims for fraud in their first and second causes of action are not barred by the statute of frauds. *Kent v. Humphries*, 303 N.C. 675, 281 S.E. 2d 43 (1981).

The pleadings and depositions forecast enough evidence of constructive fraud to survive a summary judgment motion. Constructive fraud may arise where the plaintiffs have reposed a special confidence in the defendant which creates a fiduciary relationship. *Vail v. Vail*, 233 N.C. 109, 63 S.E. 2d 202 (1951). Constructive fraud is presumed from the breach of a fiduciary duty; it does not require intentional deception as an essential element. *Miller v. First National Bank of Catawba County*, 234 N.C. 309, 67 S.E. 2d 362 (1951).

From 1973 to 1976 the defendant had legal title to land beneficially owned, in part, by the plaintiffs. According to plaintiffs: Defendant promised to take care of the financing until they could turn a profit; defendant and plaintiffs agreed to hold the land for resale; because of the defendant's legal skills, proximity to the land, and knowledge of real estate, the plaintiffs reposed a special confidence in him. Thus, sufficient evidence of a fiduciary relationship exists to create a jury issue. Furthermore, there is a genuine issue of material fact as to whether defendant breached any fiduciary duty since plaintiffs allege he turned away prospective buyers, resulting in eventual foreclosure and loss of profits. The facts that defendant did not benefit from the deals on the land and that he no longer has an interest in the land are no barrier to a constructive fraud claim. Plaintiffs have shown enough facts supporting a constructive fraud claim to defeat a summary judgment motion.

Defendant argues that plaintiffs' first cause of action amounts to a collateral attack on the foreclosure sale and should

be barred by laches; however, the foreclosure sale was merely the consequence of defendant's actions. Plaintiffs' suit charges the defendant's actions, not the foreclosure, as being a breach of contractual or fiduciary duties.

[3] Plaintiff Bumgarner contends the trial court erred in ordering summary judgment against his second cause of action, based upon allegations that defendant used some of the profits from the sale of the Morgan Township land for his own benefit rather than sharing the profits equally with the plaintiffs.

Both sides admit to an agreement to divide the profits three ways. Defendant argues that plaintiffs' failure to put any money into purchasing the land constituted a lack of valuable consideration to support their agreement, thereby justifying any nonperformance on his part; but valuable consideration need not be money. Any benefit to the promisor or any loss to the promisee, including the promisee doing something he is not bound to do or refraining from exercising a right, suffices as consideration for a promise. *Carolina Helicopter Corp. v. Cutter Realty Co., Inc.*, 263 N.C. 139, 147, 139 S.E. 2d 362, 368 (1964). Plaintiff Bumgarner allegedly devoted his time and knowledge as a real estate entrepreneur in seeking out prospective buyers; if so, his efforts were consideration enough to support any promise by defendant to manage and help sell the property.

Defendant informed plaintiff Bumgarner that his profit from the sale to Peek should be listed as $13,653.53 for tax purposes; yet defendant, who handled the transaction, paid only $6,920.24 to plaintiff Bumgarner as his share of the proceeds. This discrepancy raises a genuine issue of material fact which should have overcome defendant's motion for summary judgment as to plaintiff Bumgarner's contract and fraud claims.

[4] Defendant states that his deed of 43 acres to plaintiffs served as an accord and satisfaction. An accord and satisfaction requires an agreement, which is the accord, and performance of the agreement, which is the satisfaction. *Dobias v. White*, 239 N.C. 409, 80 S.E. 2d 23 (1954). Similarly, a compromise and settlement, a modification, and a novation all require a new agreement between the parties. Plaintiff Bumgarner specifically denies agreeing to take the 43 acres in lieu of his share of the profits. His denial creates a genuine issue of material fact as to whether

an accord or modification or novation occurred, so summary judgment was improper.

[5] Both plaintiffs contend the trial court erred in granting summary judgment against their third cause of action asking for punitive damages. Though, generally, punitive damages were not recoverable in fraud actions at one time, that is no longer the case. *Newton v. Standard Fire Insurance Co.*, 291 N.C. 105, 229 S.E. 2d 297 (1976); *Kleinfelter v. Northwest Builders and Developers, Inc.*, 44 N.C. App. 561, 261 S.E. 2d 498 (1980). Which is as it always should have been, it seems to us, since the calculated deceit of others, to their detriment, inherent in all frauds, merits punishment if any civil wrong does. While intentional deceit is not a necessary element for constructive fraud, an abuse of fiduciary responsibility can be just as gross and aggravating. Thus, to the extent that plaintiffs have stated fraud claims that should be submitted to a jury, so also have they stated a basis for punitive damages.

[6] Finally, plaintiff Griffin contends the trial court erred in denying his summary judgment motion as to defendant's counterclaim. We hold that a genuine issue of material fact exists, but that the statute of limitations bars part of the counterclaim.

Defendant's counterclaim asks for reimbursement of the payments totaling around $20,000 that he made on his $44,619 note. Only the defendant's name is on the note, although it was a refinancing of notes both Griffin and defendant had been liable on. A claim for equitable contribution depends on one party paying more than his share of a common obligation on which both (or all) parties are liable. *Nebel v. Nebel*, 223 N.C. 676, 28 S.E. 2d 207 (1943). Since Griffin was not liable on the note involved in the counterclaim, defendant cannot seek contribution from him. Nor is there any evidence of a contract of indemnity. Yet defendant has stated evidence sufficient to raise a jury issue in *quasi* contract. An implied or *quasi* contract rests upon the equitable principle that a person may not unjustly enrich himself at the expense of another. *Root v. Allstate Insurance Co.*, 272 N.C. 580, 158 S.E. 2d 829 (1968).

G.S. 1-52(1) sets a three-year limit on bringing implied contract actions. Plaintiff Griffin argues that the statute of limitations bars the counterclaim since defendant executed the deed of

trust on 17 June 1975 and did not file his counterclaim until 11 July 1980. But the limitations period does not begin to run, of course, until the injured party is at liberty to sue. *Wheeless v. St. Paul Fire and Marine Insurance Co.*, 11 N.C. App. 348, 181 S.E. 2d 144 (1971). Defendant could not sue for reimbursement until he had paid out something. When all of defendants' payments were made and their amount is not clearly shown by the record, but it does appear that some payments were made before 11 July 1977. As to those payments, summary judgment based on the statute of limitations should have been entered for plaintiff Griffin. But as to subsequent payments, the counterclaim presents a triable issue.

Thus, the order granting defendant A. Clyde Tomblin's motions for summary judgment is reversed; and the order denying plaintiff Griffin's motion for summary judgment against defendants' counterclaim is reversed, but only to the payments made before 11 July 1977.

Reversed in part; affirmed in part.

Judges HILL and JOHNSON concur.