SANDRA G. HAYNES AND HUSBAND, NELSON E. HAYNES, PLAINTIFFS v. B&B REALTY GROUP, LLC D/B/A KELLER WILLIAMS PREFERRED REALTY, AND BRENDA L. BENSON, DEFENDANTS

No. COA05-1125

(Filed 1 August 2006)

## 1. Contracts— breach—vesting of profit sharing rights

The trial court did not err in a breach of contract case by concluding there was no genuine issue of material fact as to the date that plaintiff's profit sharing rights vested, because: (1) the profit sharing rights vested three years subsequent to the associate becoming affiliated with the pertinent realty company, plaintiff's own affidavit states she formally affiliated herself with the realty company on 10 November 2000 which was her official start date, and plaintiff's relationship with the realty company was terminated on 5 November 2003; and (2) the undisputed evidence established that the 5% interest was scheduled to vest on the same date as the profit sharing rights.

## 2. Contracts— breach—summary judgment—individual liability

The trial court did not err in a breach of contract case by concluding that defendants were entitled to judgment as a matter of law regarding whether defendant realtor could be held individually liable, because: (1) plaintiffs did not allege any facts to support a claim of tortious conduct by defendant realtor; and (2) at the summary stage, plaintiffs cannot rely on the allegations of their complaint, but need to present specific facts to support their claim.

### 3. Contracts— breach—consideration

The trial court did not err in a breach of contract case by granting summary judgment in favor of defendants under N.C.G.S. § 1A-1, Rule 56(c) even though plaintiffs contend they established the essential elements of their claim for breach of an implied promise not to wrongfully frustrate the vesting of the 5% ownership interest, because: (1) although plaintiff realtor's contribution of her time and knowledge as a real estate entrepreneur could constitute valid consideration, plaintiff had already performed the start-up services at the time the pertinent addendum to the independent contractor agreement was executed, and past services cannot constitute legal consideration to support the transfer of the ownership interest; (2) plaintiff was under a continuing obligation to utilize her expertise and knowledge of the real estate market for the benefit of the realty company based on the independent contractor agreement; and (3) plaintiffs cannot establish valid consideration to support an agreement by defendants to transfer the 5% ownership interest.

### 4. Fiduciary Relationship— breach of fiduciary duty—assignment of membership interest

The trial court did not err by concluding that plaintiffs did not establish all of the elements for the claim of breach of fiduciary duty, because: (1) plaintiff realtor did not become a member of the company, but was granted only the potential right to receive 5% of distributions otherwise allocated to defendant realtor; (2) an assignment of a membership interest does not dissolve a limited liability company or entitle the assignee to become or exercise any rights of a member; (3) an assignment entitles the assignee to receive, to the extent assigned, only the distributions and allocations to which the assignor would be entitled but for the assignment; (4) there is no other recognized relationship of trust or confidence that plaintiffs assert existed between plaintiff realtor and the company; and (5) plaintiffs' claim for constructive fraud must likewise fail as plaintiffs cannot establish a fiduciary relationship.

### 5. Unfair Trade Practices— aggravating circumstances—commerce—profit sharing rights

The trial court did not err by granting summary judgment in favor of defendants on the claim for unfair and deceptive trade practices, because: (1) plaintiffs set forth no facts to support the

aggravating circumstances alleged in their complaint; (2) plaintiffs cannot establish that the conduct alleged affected commerce; and (3) plaintiffs present no evidence of how the dispute over plaintiff's profit sharing rights had an impact beyond the relationship between plaintiff realtor and defendant company.

Appeal by plaintiffs from order entered 20 April 2005 by Judge Orlando F. Hudson in Durham County Superior Court. Heard in the Court of Appeals 11 April 2006.

*Hedrick Murray & Cheek PLLC, by John C. Rogers, III, for plaintiffs-appellants.*

*Patterson, Dilthey, Clay, Bryson & Anderson, L.L.P. by Thomas M. Buckley and Tobias S. Hampson, for defendants-appellees.*

ELMORE, Judge.

Plaintiffs Sandy Haynes and Nelson Haynes appeal an order of the trial court granting summary judgment to defendants, B & B Realty Group, LLC d/b/a Keller Williams Preferred Realty, and Brenda Benson. Sandy Haynes (Haynes) and Brenda Benson (Benson) worked as residential real estate agents for Fonville Morrisey Realty in Durham. In the summer of 2000, Benson informed Haynes that she was going to start a franchise of Keller Williams Realty, Inc. (Keller Williams). A person who purchases a franchise from Keller Williams establishes an office known as a "Market Center." The Keller Williams franchise system has a Profit Sharing program. This program is designed to encourage associates at a Keller Williams Market Center to recruit qualified real estate agents to work at Keller Williams.

When an associate at Keller Williams recruits an agent to the Market Center, the recruited agent is placed in the associate's "downline." And when the recruited agent generates a real estate commission in a month during which the Market Center makes a profit, the recruiting associate receives a portion of that commission, or "profit share." An associate can have up to seven people in her downline. Once an associate has worked at a Keller Williams Market Center for 3 years, the associate's Profit Sharing rights "vest." When an agent's Profit Sharing rights vest, the agent can leave Keller Williams and continue to receive profit shares from commissions generated by agents in her downline.

Benson formed B & B Realty as a franchise of Keller Williams in October of 2000. Benson asked Haynes to join her because of their friendship and Haynes's approximately seventeen years of experience in the Durham residential real estate market. Haynes began recruiting qualified agents to B & B Realty prior to her start date in November of 2000. In March of 2001 Benson and Haynes signed a document indicating that Haynes would receive a 5% ownership interest in B & B Realty. In the spring of 2002 Benson asked if plaintiffs would be willing to return their 5% ownership interest in exchange for a reduction in Haynes's Dollar Cap. A "Dollar Cap" is the amount which, when generated in commissions, entitles an associate to retain 100% of subsequent commissions produced for that year instead of just a portion. Plaintiffs informed Benson that they wanted to retain their 5% ownership interest.

Plaintiffs alleged that, in the summer of 2003, Benson accused Haynes of having a poor attitude and causing problems in the office. Benson retained an attorney who drafted an instrument to release plaintiffs' 5% interest in B & B Realty. On 27 October 2003 Benson's attorney wrote a letter to plaintiffs' attorney stating that "[u]nder no circumstances is Mrs. Benson willing to continue any relationship with Sandy or Eddy Haynes unless they release any ownership interest they might have in B & B Realty Group." Plaintiffs refused to sign the document drafted by Benson's attorney. On 5 November 2003 Benson terminated Haynes and informed her that this termination prevented the vesting of plaintiffs' Profit Sharing rights and 5% ownership interest.

Plaintiffs filed the instant action on 26 April 2004. The Complaint alleged that defendants breached a contract to transfer the 5% ownership interest and also deprived plaintiffs of their Profit Sharing rights through wrongful conduct. Defendants filed motions to dismiss and for summary judgment on 6 April 2005. In response, plaintiffs submitted four affidavits in opposition to defendants' motions. The trial court held a hearing on 15 April 2005. In an order entered 20 April 2005, the trial court granted defendants' motions for summary judgment as to each claim asserted in plaintiffs' complaint. Plaintiffs filed a timely notice of appeal to this Court.

## I.

The trial court properly grants summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue

HAYNES v. B & B REALTY GRP., LLC

[179 N.C. App. 104 (2006)]

as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). "A party moving for summary judgment may prevail if it meets the burden (1) of proving an essential element of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982).

II.

**[1]** Plaintiffs argue that there is a genuine issue of material fact as to the date that Haynes's Profit Sharing rights vested. "Vesting" is explained in the Keller Williams Policies and Guidelines: "After an associate has been affiliated with any KELLER WILLIAMS Market Center for 3 years, the associate will be exempt from production requirements related to the collection of Profit Sharing." Thus, an agent can leave Keller Williams and continue to receive profit shares. Plaintiffs assert the vesting date is 1 November 2003; defendants contend the date is either 10 or 13 November 2003.[1] In support of their argument, plaintiffs state that Haynes began recruiting agents and performing other preliminary work for Keller Williams on 1 November 2000. But Haynes's own affidavit states that she formally affiliated with Keller Williams on 10 November 2000. Thus, there is undisputed evidence that plaintiff Haynes was not "affiliated" until 10 November 2000, her official start date at Keller Williams. Since profit sharing rights vest three years subsequent to the associate becoming affiliated with Keller Williams, plaintiffs' Profit Sharing rights were to vest on 10 November 2003.

Plaintiffs also contend that the trial court erred in determining that the 5% ownership interest had not vested on the date Haynes's relationship with Keller Williams was terminated, 5 November 2003. However, plaintiffs allege in the Complaint that Benson told Haynes her 5% ownership interest would vest the same day as her Profit Sharing rights. Defendants admit this allegation is true in their answer. Therefore, the undisputed evidence establishes

---

1. For purposes of defendants' summary judgment motions, it is immaterial whether the vesting date was 10 November or 13 November 2003; plaintiffs' relationship with B & B Realty was terminated prior to either date, on 5 November 2003. In her affidavit, Haynes states that "[w]hile, as set forth above, I believe that my vesting date is November 1, 2003, at the latest my vesting date would be November 10, 2003[.]" As we view the evidence in the light most favorable to the non-moving party, *see Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000), the evidence establishes the latest possible vesting date was 10 November 2003.

that the 5% interest was scheduled to vest on the same date as the profit sharing rights.

## III.

[2] Next, plaintiffs assert the trial court erred by concluding defendants are entitled to judgment as a matter of law. At the summary judgment hearing, defendants argued that Benson could not be held individually liable. In their brief, plaintiffs cite cases where our appellate courts explained that an officer of a corporation can be held personally liable for torts in which she actively participates. *See, e.g., Wilson v. McLeod Oil Co.*, 327 N.C. 491, 518, 398 S.E.2d 586, 600 (1990); *Wolfe v. Wilmington Shipyard, Inc.*, 135 N.C. App. 661, 670, 522 S.E.2d 306, 312-13 (1999). In order to prevail in their argument, plaintiffs must establish a tort committed by B & B Realty in which Benson actively participated. Plaintiffs aver in the Complaint that Benson and B & B Realty "develop[ed] and prosecut[ed] a scheme to attempt to prevent the vesting of Plaintiffs' 5% ownership interest in B & B Realty[.]" However, plaintiffs do not allege any facts to support a claim of tortious conduct by Benson. At the summary judgment stage, plaintiffs cannot rely on the allegations of the complaint; rather, plaintiffs need to present specific facts to support their claim. *See Lowe*, 305 N.C. at 370-71, 289 S.E.2d at 366-67. As plaintiffs failed to do so, defendants were entitled to judgment as a matter of law on the issue of Benson's individual liability.

## IV.

[3] Next, plaintiffs contend the court erred in granting defendants' summary judgment motion where plaintiffs established the essential elements of their claim for breach of an implied promise not to wrongfully frustrate the vesting of the 5% ownership interest. Plaintiffs point out that both parties to an executory contract impliedly promise not to do anything to the prejudice of the other. *See Tillis v. Cotton Mills and Cotton Mills v. Tillis*, 251 N.C. 359, 363, 111 S.E.2d 606, 610 (1959). Plaintiffs argue that the Addendum to Independent Contractor Agreement was a contract to transfer the 5% ownership interest to plaintiffs. This document, signed by both Haynes and Benson on 29 March 2001, indicates that Haynes is gifted 5% of net profits in Keller Williams Realty and that vesting of ownership occurs at the end of a 3-year period. The parties agree that, although not reflected in the document, the 5% ownership interest was to vest on the same date as Haynes's Profit Sharing rights (three years after her start date at Keller Williams).

In response, defendants argue plaintiffs have failed to establish all the essential elements of a valid contract. In particular, this document transferring the 5% ownership interest to Haynes cannot constitute a valid contract unless supported by consideration. The document does not indicate what services Haynes would provide in return for this transfer. Plaintiffs cite one case in their brief on the issue of consideration, *Bumgarner v. Tomblin*, 63 N.C. App. 636, 306 S.E.2d 178 (1983). In that case, the plaintiff and the defendant agreed to share the profits from the sale of a piece of land, but the defendant argued that no contract existed due to the failure of the plaintiff to contribute any money into purchasing the land. This Court stated that consideration may consist of any benefit to the promisor or loss to the promisee, such as the promisee doing something she is not bound to do. *Bumgarner*, 63 N.C. App. at 642, 306 S.E.2d at 183. Accordingly, the plaintiff's contribution of his time and knowledge as a real estate entrepreneur could constitute valid consideration. *Id.*

Plaintiffs point out that Haynes provided her expertise in the real estate market and contributed valuable services to the start-up of the Keller Williams Market Center. But Haynes had already performed the start-up services at the time the Addendum to Independent Contractor Agreement was executed. Haynes's past services cannot constitute legal consideration to support the transfer of the ownership interest. *See Penley v. Penley*, 314 N.C. 1, 18-19, 332 S.E.2d 51, 61-62 (1985) (absent evidence that party performing services reasonably expected to be compensated, past services cannot be valid consideration). Also, the Independent Contractor Contract, which is entered into between Keller Williams Realty and an agent beginning her affiliation with the Market Center, states that the agent agrees to work diligently and give her best efforts to sell, lease, or rent all real estate listed with Keller Williams Realty. Thus, Haynes was under a continuing obligation to utilize her expertise and knowledge of the real estate market for the benefit of B & B Realty. Haynes's pre-existing obligation cannot support a valid contract. *See Burton v. Kenyon*, 46 N.C. App. 309, 311, 264 S.E.2d 808, 809 (1980) ("a promise to perform an act which the promisor is already bound to perform is insufficient consideration for a promise by the adverse party"). Plaintiffs cannot establish valid consideration to support an agreement by Benson and B & B Realty to transfer the 5% ownership interest. The trial court properly granted summary judgment on plaintiffs' claim for breach of an implied promise to transfer the ownership interest.

V.

**[4]** Plaintiffs next contend they established all elements of the claim for breach of fiduciary duty. "A claim for breach of fiduciary duty requires the existence of a fiduciary relationship." *White v. Consolidated Planning, Inc.*, 166 N.C. App. 283, 293, 603 S.E.2d 147, 155 (2004), *disc. review denied*, 359 N.C. 286, 610 S.E.2d 717 (2005). Plaintiffs assert that a fiduciary relationship existed between Haynes and Benson because Haynes was a minority owner of B & B Realty. But the evidence in the record belies this assertion. The Operating Agreement of B & B Realty provides:

> Any transferee of a Membership Interest by any means [sale, assignment, gift, pledge, exchange or other disposition] shall have only the rights, powers and privileges set out in section 10.3 or otherwise provided by law and shall not become a Member of the Company except as provided in Section 10.4.

Section 10.3 provides that a transferee of a membership interest "shall be entitled to receive the distributions and allocations to which the Member would be entitled to but for the transfer of his Membership Interest." Under section 10.4, a transferee may be admitted as a Member only by written consent of all Members; acceptance of all terms and conditions of the Operating Agreement; and payment of reasonable expenses incurred by the Company in connection with admission as a Member. Brenda Benson is the sole Manager and Member of B & B Realty, a North Carolina limited liability company. Thus, Haynes did not become a member of B & B Realty, but was granted only the potential right to receive 5% of distributions otherwise allocated to Benson.

The Operating Agreement is consistent with the North Carolina statutory provisions governing limited liability companies. *See* N.C. Gen. Stat. § 57C-5-02 (2005) ("An assignment of a membership interest does not dissolve the limited liability company or entitle the assignee to become or exercise any rights of a member. An assignment entitles the assignee to receive, to the extent assigned, only the distributions and allocations to which the assignor would be entitled but for the assignment."). Thus, Haynes was not a minority owner of B & B Realty. Also, there is no other recognized relationship of trust or confidence that plaintiffs assert existed between Haynes and B & B Realty. As such, plaintiffs failed to establish the essential elements of a breach of fiduciary duty. *See White*, 166 N.C. App. at 293, 603 S.E.2d at 155. Plaintiffs' claim for constructive fraud must

likewise fail, as plaintiffs cannot show a fiduciary relationship. *See Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 28, 560 S.E.2d 817, 823 (existence of fiduciary duty is essential element of constructive fraud claim), *disc. review denied*, 356 N.C. 164, 568 S.E.2d 196 (2002).

## VI.

**[5]** Finally, plaintiffs assert the court erred in granting summary judgment to defendants on the claim for unfair and deceptive trade practices in violation of Chapter 75 of our General Statutes. To prevail on this claim, a plaintiff must show "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused injury to the plaintiff or to his business." *Spartan Leasing v. Pollard*, 101 N.C. App. 450, 460-61, 400 S.E.2d 476, 482 (1991). Further, "[s]ome type of egregious or aggravating circumstances must be alleged and proved. . . . Even a party who intentionally breaches a contract is not, without more, liable for such conduct under the North Carolina Unfair Trade Practices Act." *Di Frega v. Pugliese*, 164 N.C. App. 499, 507, 596 S.E.2d 456, 462 (2004). Here, plaintiffs set forth no facts to support the "aggravating circumstances" alleged in their complaint. Also, plaintiffs cannot establish that the conduct alleged affected commerce. *See Durling v. King*, 146 N.C. App. 483, 489, 554 S.E.2d 1, 4-5 (2001) (defendant employer's withholding of commissions from employee was breach of contract but had no impact beyond parties' employment relationship; actions did not affect commerce and thus no violation of Chapter 75). Plaintiffs present no evidence of how the dispute over plaintiffs' Profit Sharing rights had an impact beyond the relationship between Haynes and B & B Realty.

As the trial court properly granted summary judgment to defendants pursuant to Rule 56(c), we affirm its order entered 20 April 2005.

Affirmed.

Judges WYNN and LEVINSON concur.