IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-274

Filed 5 December 2023

Durham County, No. 22 CVS 2507

UNIVERSAL LIFE INSURANCE COMPANY, Plaintiff,

v.

GREG E. LINDBERG, Defendant.

Appeal by Defendant from orders entered 27 October 2022 and 16 November 2022 by Judge Michael O'Foghludha in Durham County Superior Court. Heard in the Court of Appeals 4 October 2023.

Fox Rothschild LLP, by Matthew Nis Leerberg & Elizabeth Sims Hedrick, for Defendant-Appellant.

Troutman Pepper Hamilton Sanders, LLP, by Christopher G. Browning, Jr., for Plaintiff-Appellee.

Williams Mullen, by Wes J. Camden, for Appellee-Southland National Insurance Company, et al.

Attorney General Joshua H. Stein, by Special Deputy Attorneys General Daniel S. Johnson & M. Denise Stanford, for Intervenor-Appellee North Carolina Commissioner of Insurance Mike Causey.

CARPENTER, Judge.

Greg E. Lindberg ("Defendant") appeals from the trial court's orders issuing an injunction (the "Injunction") and issuing a charging order (the "Charging Order"). After careful review, we vacate the Injunction, and we reverse the Charging Order in part and affirm the Charging Order in part.

## I.     Factual & Procedural Background

This case concerns state-court enforcement of a federal-court judgment.  On 3 May 2022, the United States District Court for the Middle District of North Carolina entered a money judgment requiring Defendant to pay Plaintiff $524,009,051.26, plus interest (the "MDNC Judgment").[1]  On 12 July 2022, Plaintiff registered the MDNC Judgment with the Durham County Clerk of Court and moved to enforce the judgment under the Uniform Enforcement of Foreign Judgments Act.  On 19 August 2022, the Durham County Superior Court granted Plaintiff's motion to enforce the MDNC Judgment.  On 19 September 2022, Defendant appealed the enforcement order.

On 1 August 2022, Plaintiff filed a motion for the entry of a charging order concerning all limited liability companies ("LLCs") in which Defendant has an interest.  On 7 September 2022, Plaintiff filed a motion to compel Defendant to turn over stock to the local sheriff and to enjoin Defendant from interfering, pledging, encumbering, assigning, or otherwise disposing of his ownership interest in any businesses.

On 13 September 2022, the trial court allowed Southland National Insurance

---

[1] On 26 September 2023, Plaintiff filed a motion requesting this Court to take judicial notice of two Middle District orders; neither order is in the record, but both relate to the MDNC Judgment. We grant Plaintiff's motion.  *See State v. Watson*, 258 N.C. App. 347, 352, 812 S.E.2d 392, 395 (2018) ("North Carolina law clearly contemplates that our courts, both trial and appellate, may take judicial notice of documents filed in federal courts.").

Company, Bankers Life Insurance Company, Colorado Bankers Life Insurance Company, and Southland National Reinsurance Corporation to intervene. On 13 October 2022, the trial court also allowed Mike Causey, in his official capacity as Commissioner of Insurance on behalf of the North Carolina Insurance Companies (the "NCIC"), to intervene.

On 27 October 2022, the trial court issued the Injunction, granting Plaintiff's 7 September motion, in part, by enjoining Defendant from withdrawing or encumbering more than $5,000 from any entity owned or controlled by Defendant without Plaintiff's and the NCIC's consent or by court order. The Injunction also scheduled a November 2022 status conference "to hear pending motions" and stated Plaintiff could use "any judicial process permitted by law to pursue execution on its judgment against [Defendant]" in the meantime. Defendant appealed from the Injunction on 31 October 2022.

On 16 November 2022, the trial court issued the Charging Order, which affected 626 different LLCs. In order to satisfy the MDNC Judgment, the Charging Order required all LLC distributions intended for Defendant be sent to Plaintiff, instead. The Charging Order also compelled Defendant to produce all governing documents and verified accountings concerning the 626 LLCs. Further, the Charging Order required Defendant to update the governing documents and accountings every sixty days. Finally, the Charging Order compelled the 626 LLCs to "freeze" all payments, other than wages, to Defendant. The requirements of the Charging Order

were all "pending further orders of [the trial court]." Defendant appealed the Charging Order on 9 December 2022.

On 22 December 2022, the trial court amended the Injunction "to expressly permit the payment of reasonable business expenses of ordinary course operations." On 30 December 2022, this Court consolidated Defendant's appeals. On 10 August 2023, Defendant filed a petition for writ of certiorari. On 15 September 2023, Plaintiff filed a motion to dismiss this appeal. On appeal, Defendant argues the trial court erred in issuing both the Injunction and the Charging Order.

## II.    Jurisdiction

The initial issue is whether this Court has jurisdiction over this appeal. We must first discern whether this case is interlocutory because "[g]enerally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). "An order is interlocutory if it does not determine the entire controversy between all of the parties." *Abe v. Westview Cap., L.C.*, 130 N.C. App. 332, 334, 502 S.E.2d 879, 881 (1998).

In the Injunction, the trial court enjoined Defendant from withdrawing more than $5,000 from any entity owned or controlled by Defendant. Additionally, the trial court set a future status conference "to hear pending motions." And the Charging Order required Defendant to update and deliver accountings of the 626 LLCs to Plaintiff every sixty days, "pending further orders of [the trial court]."

Although the underlying MDNC Judgment is a final judgment, both the Charging Order and the Injunction fail to "determine the entire controversy between all of the parties" because both are subject to change, pending further proceedings by the trial court. *See id.* at 334, 502 S.E.2d at 881. Thus, though not typical, this appeal is interlocutory. *See id.* at 334, 502 S.E.2d at 881.

There are, however, exceptions to the general rule prohibiting appeals of interlocutory orders. *See Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994). One such exception applies to an interlocutory order that "[i]n effect determines the action and prevents a judgment from which an appeal might be taken." N.C. Gen. Stat. § 7A-27(b)(3)(b) (2021).

The challenged orders effectively determine this action. First, although this case is interlocutory, the MDNC Judgement is a valid, enforceable judgement. So, paradoxically, this case is "determined" in that respect. *See id.* Second, if there is no right of immediate appeal here, Defendant has two options: Either Defendant can appeal after adhering to the orders and satisfying the MDNC Judgment, or Defendant can appeal from a judgment adjudicating him in contempt of the orders.

In other words, unless we conclude the challenged orders effectively determine this case, Defendant must either comply with potentially invalid orders in order to appeal or be held in contempt in order to appeal. If these orders do not "in effect determine the action," no order will. *See id.* Therefore, this Court has jurisdiction over this appeal under subsection 7A-27(b)(3)(b). *See id.* We accordingly deny

Plaintiff's motion to dismiss this appeal, and we dismiss Defendant's petition for writ of certiorari as moot.

### III.    Issues

The issues on appeal are whether the trial court erred in issuing: (1) the Injunction; and (2) the Charging Order.

### IV.    Analysis

#### A.  The Injunction

#### 1.  Standard of Review

Our caselaw lacks definitive authority concerning our standard of review.  In *84 Lumber Co. v. Habitech Enterprises*, an unpublished case, this Court interpreted multiple supplemental-proceeding statutes and stated that the statutes were "discretionary in nature, and therefore, we will not disturb them absent an abuse of discretion."  2007 N.C. App. LEXIS 2425 at * 4 (Dec. 4, 2007) (citing *State ex rel. Long v. Interstate Cas. Ins. Co.*, 120 N.C. App. 743, 750, 464 S.E.2d 73, 77 (1995)).  On the other hand, we review a trial court's grant of a preliminary injunction "essentially" de novo.  *QSP, Inc. v. Hair*, 152 N.C. App. 174, 176, 566 S.E.2d 851, 852 (2002).  Similarly, we review questions of statutory interpretation de novo.  *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010).

Here, we must interpret supplemental-proceeding statutes.  If published, we would be bound by *84 Lumber,* but it remains only persuasive authority.  *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989); *Erie Ins. Exch. v. Miller*,

160 N.C. App. 217, 222, 584 S.E.2d 857, 860 (2003) ("Unpublished decisions are not . . . controlling authority."); *84 Lumber*, 2007 N.C. App. LEXIS 2425 (unpublished).

We review preliminary injunctions and statutory interpretations de novo, and this case involves an injunction based upon statutory authority. *See Hair*, 152 N.C. App. at 176, 566 S.E.2d at 852; *McKoy*, 202 N.C. App. at 511, 689 S.E.2d at 592. Therefore, we review supplemental-proceeding injunctions, like the challenged injunction here, de novo.

"Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

### 2. Authority to Issue the Injunction

First, Defendant argues the trial court lacked authority to issue the Injunction because Rule 65 of the North Carolina Rules of Civil Procedure does not apply to post-judgment proceedings. We disagree.

We agree that Rule 65 concerns temporary restraining orders and preliminary injunctions—neither of which occur post-judgment. *See* N.C. Gen. Stat. § 1A-1, Rule 65(a)–(b) (2021). But within Chapter 1 of our General Statutes lies Article 31, labeled "Supplemental Proceedings." Article 31 statutes facilitate the satisfaction of judgments. *See* N.C. Gen. Stat. §§ 1-352 to -368 (2021). More specifically, section 1-358 states: "The court or judge may, by order, forbid a transfer or other disposition

of, or any interference with, the property of the judgment debtor not exempt from execution." *Id*. § 1-358.

Here, the trial court issued the Injunction under "Rule 65 of the North Carolina Rules of Civil Procedure *and the equitable powers of this Court to issue the injunctive equitable relief.*" Regardless of the applicability of Rule 65, the "equitable powers" of the trial court include section 1-358, which allows a court to "forbid a transfer or other disposition of . . . the property of the judgment debtor." *See id.*

The MDNC Judgment is no longer disputed, and it renders Defendant a judgment debtor. Therefore, the trial court had the authority to issue the Injunction under "the equitable powers" detailed in Article 31, regardless of its mention of Rule 65. *See id*.

### 3. Jurisdiction to Issue the Injunction

Defendant also argues the trial court lacked jurisdiction to issue the Injunction because a writ of execution was never issued and returned unsatisfied. Specifically, Defendant asserts that sections 1-358 and 1-362 of Article 31 require a returned, unsatisfied writ of execution. We agree.

#### i.    Section 1-358

We have held that Article 31 statutes require the return of an unsatisfied writ of execution. *See Milone & Macbroom, Inc. v. Corkum,* 279 N.C. App. 576, 582, 865 S.E.2d 763, 767–68 (2021). In *Milone*, the plaintiff did not return an unsatisfied writ of execution, and accordingly, we said the "supplemental proceedings under Article

31 of Chapter 1 of the General Statutes were not available to Plaintiff." *Id.* at 582, 865 S.E.2d at 768.

In *Radiance Capital Receivables Twenty One, LLC v. Lancsek*, however, this Court distinguished *Milone* and held that section 1-358 does not require a returned, unsatisfied writ. 286 N.C. App. 674, 677, 881 S.E.2d 883, 887 (2022) ("Section 1-358 . . . [does] not require a return of the execution unsatisfied prior to any supplemental proceeding."). This Court in *Radiance* reasoned that the sections analyzed in *Milone* were "directed at the judgment debtor to discover his property." *Id.* at 678, 881 S.E.2d at 887. According to the analysis in *Radiance*, however, the order before it "was entered to prevent transfer of defendant's property and/or funds by a Dare County financial institution, a third party with access to the property." *Id.* at 678–79, 881 S.E.2d at 887.

In other words, according to *Radiance*, section 1-358 does not require the return of an unsatisfied writ when the section is applied to enforce third-party action. *See id.* at 678–79, 881 S.E.2d at 887–88 ("Since the [order] was issued pursuant to Sections 1-358 and 1-360 to prevent third parties from disposing of property, the [order] differed from the supplemental proceeding in *Milone & MacBroom, Inc.*, in which the trial court lacked subject matter jurisdiction.").

Either the *Radiance* Court astutely distinguished *Milone*, or the *Radiance* Court improperly held to the contrary of *Milone*. If the latter, we are bound by *Milone*. *See State v. Gardner*, 225 N.C. App. 161, 169, 736 S.E.2d 826, 832 (2013) ("[W]here

there is a conflicting line of cases, a panel of this Court should follow the older of those two lines.") (citing *In re R.T.W.*, 359 N.C. 539, 542 n.3, 614 S.E.2d 489, 491 n.3 (2005)). If the former, the writ requirement hinges on the identity of the compelled party. *See Radiance*, 286 N.C. App. at 678–79, 881 S.E.2d at 887–88. If the compelled party is a party to the suit, a returned writ is required; if the compelled party is a third party, a returned writ is not required. *See id.* at 678–79, 881 S.E.2d at 887–88.

Here, each enjoining conclusion of law within the Injunction begins with, "Defendant is hereby enjoined." The Injunction compels Defendant's actions, not third-party actions. So regardless of whether the distinction in *Radiance* is valid, the trial court needed a returned, unsatisfied writ of execution to have jurisdiction under section 1-358. *See Milone,* 279 N.C. App. at 582, 865 S.E.2d at 767–68 (requiring a returned writ for Article 31 statutes); *Radiance*, 286 N.C. App. at 678–79, 881 S.E.2d at 887–88 (creating an exception for when third parties are compelled); *Gardner*, 225 N.C. App. at 169, 736 S.E.2d at 832 (binding us by *Milone* if *Radiance* conflicts with *Milone*).

### ii.    Section 1-362

Section 1-362 states:

> The court or judge may order any property, whether subject or not to be sold under execution (except the homestead and personal property exemptions of the judgment debtor), in the hands of the judgment debtor or of any other person, or due to the judgment debtor, to be applied towards the satisfaction of the judgment; except that the earnings of the debtor for his personal services, at any time within 60 days

next preceding the order, cannot be so applied when it appears, by the debtor's affidavit or otherwise, that these earnings are necessary for the use of a family supported wholly or partly by his labor.

N.C. Gen. Stat. § 1-362.

Stated differently, the trial court may order a judgment debtor's non-exempt property be applied towards the judgment. *See id.* But without an exception, section 1-362, like the other Article 31 statutes, requires the return of an unsatisfied writ of execution. *See Milone*, 279 N.C. App. at 582, 865 S.E.2d at 767–68.

As detailed above, the Injunction prevents Defendant's actions, not third-party actions. Therefore, section 1-362 also requires a returned, unsatisfied writ of execution, regardless of whether the *Radiance* distinction is valid. *See Milone,* 279 N.C. App. at 582, 865 S.E.2d at 767–68 (requiring a returned writ for Article 31 statutes); *Radiance*, 286 N.C. App. at 678–79, 881 S.E.2d at 887–88 (creating an exception for when third parties are compelled); *Gardner*, 225 N.C. App. at 169, 736 S.E.2d at 832 (binding us by *Milone* if *Radiance* conflicts with *Milone*).

Thus, under both sections 1-358 and 1-362, the trial court's jurisdiction hinged on whether Plaintiff returned an unsatisfied writ of execution, so we must determine whether Plaintiff did so.

### iii. Whether Plaintiff Returned an Unsatisfied Writ of Execution

In *Massey v. Cates*, the plaintiff sought relief through section 1-363. 2 N.C. App. 162, 164, 162 S.E.2d 589, 591 (1968). This Court in *Massey* acknowledged the

requirement of a returned, unsatisfied writ. *See id*. at 164, 162 S.E.2d at 591. The Court also stated that "[Article 31] proceedings are available only after execution is attempted." *Id*. at 164, 162 S.E.2d at 591.

Here, Plaintiff returned an unsatisfied writ. Defendant, however, asserts that no officer ever attempted to execute on the MDNC Judgment. Plaintiff does not dispute this assertion. Rather, in a footnote, Plaintiff merely argues that a returned writ of execution is valid "regardless of whether the Sheriff was unable to find assets, the Sheriff could not track down the judgment debtor's assets within the 90-day statutory period, or the judgment creditor requested the Sheriff to return the execution as quickly as possible."

We disagree. The officer who signed the writ checked a box stating, "I did not serve this Writ of Execution," and he made a separate handwritten notation: "Per plaintiff's attorney, writ requested to be served unsatisfied." Further, the writ shows the date of receipt and date of return are the same: 21 September 2022. In other words, Plaintiff merely asked the deputy to check a box and return the writ—a far cry from the required attempted execution. *See id*. at 164, 162 S.E.2d at 591.

Because Plaintiff did not attempt to execute the writ, the trial court lacked jurisdiction to enter the Injunction. *See id*. at 164, 162 S.E.2d at 591. Accordingly, we vacate the Injunction. *See Milone*, 279 N.C. App. at 582, 865 S.E.2d at 767–68.

**B. The Charging Order**

**1. Standard of Review**

Whether a charging order complies with the North Carolina Limited Liability Company Act (the "NC LLC Act") is a question of statutory interpretation, which we review de novo. *See First Bank v. S&R Grandview*, *L.L.C.*, 232 N.C. App. 544, 546, 755 S.E.2d 393, 394 (2014). Again, "'[u]nder a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *Williams*, 362 N.C. at 632–33, 669 S.E.2d at 294 (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. at 647, 576 S.E.2d at 319).

## 2. Relief Granted by the NC LLC Act

The NC LLC Act is located in Chapter 57D of the North Carolina General Statutes. *See* N.C. Gen. Stat. § 57D-1-01 (2021). Section 57D-5-03, titled "Rights of judgment creditor," states:

> On application to a court of competent jurisdiction by any judgment creditor of an interest owner, the court may charge the economic interest of an interest owner with the payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the right to receive the distributions that otherwise would be paid to the interest owner with respect to the economic interest.

*Id*. § 57D-5-03(a).

In other words, to facilitate the satisfaction of judgments, trial courts can enter charging orders compelling the redirection of distributions from LLCs in which a judgment debtor is an interest owner. *See id*. Further, "[t]he entry of a charging order is the exclusive remedy by which a judgment creditor of an interest owner may

satisfy the judgment from or with the judgment debtor's ownership interest." *Id*. § 57D-5-03(d).

An "interest owner" is a "member or an economic interest owner." *Id*. § 57D-1-03(15). An "economic interest owner" is a "person who owns an economic interest but is not a member." *Id*. § 57D-1-03(11). And an "economic interest" is the "proprietary interest of an interest owner in the capital, income, losses, credits, and other economic rights and interests of a limited liability company, including the right of the owner of the interest to receive distributions from the limited liability company." *Id*. § 57D-1-03(10).

### i. Entities in Which Defendant has an Economic Interest

First, Defendant argues the Charging Order is erroneous because it includes LLCs in which Defendant has no "economic interest." We agree.

There are discrepancies in the record concerning the number of LLCs in which Defendant has an economic interest. Defendant does not challenge the validity of the Charging Order concerning 73 LLCs, as Defendant admits to being a member of those companies. Plaintiff, on the other hand, says Defendant is a member or manager of 190 LLCs, and has an economic interest in the remainder. An affidavit filed with the United States District Court for the Middle District of North Carolina, by a third-party licensed attorney, lists 329 LLCs of which Defendant is a member or manager. Yet the Charging Order says Defendant has an "economic interest" in 626 LLCs. Concerning these 626 LLCs, Plaintiff asserts that Defendant has at least an indirect

economic interest in hundreds of them through a complex web of holding companies.

The definition of "economic interest" is wide. *See id.* § 57D-1-03(10) (including "proprietary interest of an interest owner in the capital, income, losses, credits, and other economic rights"). The NC LLC Act, however, does not define "proprietary interests." And when examining statutes, words undefined by the General Assembly "must be given their common and ordinary meaning." *In re Clayton-Marcus Co.*, 286 N.C. 215, 219, 210 S.E.2d 199, 202–03 (1974). Absent precedent, we look to dictionaries to discern a word's common meaning. *Midrex Techs., Inc. v. N.C. Dep't of Revenue*, 369 N.C. 250, 258, 794 S.E.2d 785, 792 (2016).

Merriam-Webster's defines "proprietary," in adjective form, as "used, made, or marketed by one having the exclusive legal right." *Proprietary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). Black's defines "proprietary interest" as "a property right." *Proprietary Interest*, BLACK'S LAW DICTIONARY (11th ed. 2019). So, a "proprietary interest of an interest owner" is a non-member's exclusive legal entitlement to the member's property rights—namely, the member's economic rights. *See* N.C. Gen. Stat. § 57D-1-03(10), *Proprietary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, *supra*; *Proprietary Interest*, BLACK'S LAW DICTIONARY, *supra*.

An assignment is a legal transfer of property rights. *See Hinshaw v. Wright*, 105 N.C. App. 158, 164, 412 S.E.2d 138, 143 (1992). LLC members may assign their economic interests in the LLC. *See Haynes v. B & B Realty Grp., LLC*, 179 N.C. App. 104, 111, 633 S.E.2d 691, 695–96 (2006); N.C. Gen. Stat. § 57D-5-02 (2021) ("An

economic interest is transferable in whole or in part."). But absent an assignment, non-members of LLCs are not entitled to any "capital, income, losses, credits, [or] . . . distributions" from an LLC. *See* N.C. Gen. Stat. § 57D-1-03(10).

There is conflicting evidence in the record concerning how many LLCs Defendant is a member of, but all evidence suggests it is fewer than 626. And there is nothing in the record detailing how many "economic interests" have been legally assigned to Defendant. Because charging orders only apply to interest owners, *see id.* § 57D-5-03(a); because interest owners are only LLC members and non-member economic-interest holders, *see id.* § 57D-1-03(15); and because Defendant can only become a non-member economic-interest holder by assignment, *see id.* § 57D-5-02; the Charging Order is erroneous insofar as it includes LLCs of which Defendant is not a member or an assignee of an economic interest.

Therefore, the trial court erred by including 626 LLCs in the Charging Order. The record indicates Defendant was an interest owner in far fewer. On remand, the trial court must reduce the number of LLCs in the Charging Order to the number of LLCs of which Defendant is a member or an assignee of an economic interest. *See id.* § 57D-5-03(a).

### ii. Obligations Beyond the "Exclusive Remedy"

Next, Defendant argues that the Charging Order imposes obligations that go beyond the "exclusive remedy" established in the NC LLC Act. He asserts the Charging Order: (1) requires him to provide operating agreements and accountings

concerning the 626 LLCs; and (2) requires the 626 LLCs to "freeze all membership interests, economic interests, or payment of any sums to [Defendant] (other than wages) pending further order of this Court." Again, we agree with Defendant.

Subsection 57D-5-03(d) states "[t]he entry of a charging order is the *exclusive* remedy by which a judgment creditor of an interest owner may satisfy the judgment from or with the judgment debtor's ownership interest." *Id*. § 57D-5-03(d) (emphasis added). And subsection 57D-5-03(a) states that "the judgment creditor has *only* the right to receive the distributions that otherwise would be paid to the interest owner with respect to the economic interest." *Id*. § 57D-5-03(a) (emphasis added).

The plain text of Chapter 57D only gives Plaintiff the right to receive distributions. *See id*. The text says nothing about producing documents or freezing distributions. *See id*. Thus, the trial court violated the NC LLC Act when it compelled the production of documents and the freezing of distributions through the Charging Order. *See id*. § 57D-5-03(d).

Compelling the production of documents and the "freezing" of distributions may be possible under Article 31, however. *See* N.C. Gen. Stat. §§ 1-352 to -368. But as already discussed, the trial court lacked jurisdiction to operate under Article 31. *See Milone*, 279 N.C. App. at 582, 865 S.E.2d at 767–68. Therefore, even if the trial court purported to act under Article 31 when it issued the Charging Order, it lacked jurisdiction to compel the production of documents and to freeze distributions.

## V. Conclusion

The trial court lacked jurisdiction to enter the Injunction; therefore, we vacate the Injunction. Concerning the Charging Order, the trial court erred by including any LLCs of which Defendant was not a member or an assignee of an economic interest, and the trial court erred by compelling the production of documents and the freezing of distributions. Therefore, we reverse those portions of the Charging Order and remand this case to the trial court to continue proceedings in accordance with this opinion.

AFFIRMED in part, VACATED in part, REVERSED in part, and REMANDED.

Judges TYSON and HAMPSON concur.