INMAN, Judge.
 

 *348
 
 North Carolina law requires a sentencing criminal court to enter an order of commitment consistent with the judgment entered, and a defendant is entitled to entry of such order
 
 nunc pro tunc
 
 where no such order is entered. However, a commitment order entered
 
 nunc pro tunc
 
 may not vary the terms of the underlying judgment, including a requirement that the defendant serve his sentence in the custody of a state agency. Therefore, a defendant's sentence does not begin until he is actually remitted to the custody of the agency designated in and as required by the judgment.
 

 Jamal M. Watson ("Defendant") appeals from an order denying his Motion for Appropriate Relief ("MAR"), requesting the superior court strike a detainer filed against him and enter an order calculating his sentence as served. On appeal, Defendant, who was in federal custody prior to and following his sentencing in state court, argues that the trial court was required to enter a commitment order effective the date of the entry of the underlying criminal judgment, as no commitment order was entered at that time. As a result, Defendant reasons, the mandate in N.C. Gen. Stat. § 15A-1353(a) (2009) that "the date of the [commitment] order is the date service of the sentence is to begin"
 

 *394
 
 would require the trial
 
 *349
 
 court to hold that Defendant's state sentence is served, as he has been in federal custody for the entire length of his state sentence. We agree with Defendant that the sentencing court was required by state law to enter a commitment order at the time of judgment and sentencing. However, because the judgment required his sentence be served "in the custody of: N.C. DOC[,]" i.e., the North Carolina Department of Correction,
 
 [1]
 
 and an order of commitment cannot vary the terms of a judgment, we remand for entry of a commitment order
 
 nunc pro tunc
 
 requiring his sentence begin upon his release from federal custody.
 

 I.
 
 FACTUAL AND PROCEDURAL HISTORY
 

 Defendant committed the offense of Possession of a Firearm by a Felon on 21 December 2006 and was taken into state custody. Defendant posted bond and was released from custody the following day. Defendant was indicted on that charge and as a Habitual Felon on 2 January 2007.
 

 On 1 May 2007, Defendant was again arrested for Possession of a Firearm by a Felon and taken into state custody. Defendant again posted bond, and was released from custody on 2 May 2007. Defendant was indicted on the second Possession of a Firearm by a Felon charge and a second Habitual Felon charge on 5 May 2008. The two Possession of a Firearm by a Felon charges and the two Habitual Felon charges are referred to collectively as the "State Charges."
 

 While Defendant's State Charges were pending, Defendant was indicted on felony charges in the United States District Court for the Eastern District of North Carolina on 24 September 2008 (the "Federal Case").
 
 [2]
 
 Per the indictment filed in federal court, the Federal Case was unrelated to the State Charges. Defendant was arrested and taken
 
 *350
 
 into federal custody by a special agent with the Federal Bureau of Investigation on 29 September 2009. A detention order was entered in the Federal Case on 30 September 2008, and Defendant waived a detention hearing on 15 October 2008. Defendant pleaded guilty in the Federal Case on 2 March 2009 and, following a continuance, was scheduled for sentencing on 6 July 2009.
 

 After he pleaded guilty and while awaiting sentencing in the Federal Case, Defendant pleaded guilty to the State Charges on 18 May 2009. The trial court held a sentencing hearing that day, and, per the plea, Defendant agreed to a consolidated sentence of 80 months minimum and 105 months maximum imprisonment. On 19 May 2009, the trial court entered its judgment (the "Judgment") using Administrative Office of the Courts form AOC-CR-601. Per the language of the form, the Judgment ordered that Defendant "be imprisoned ... for a minimum term of: 80 months [and] for a maximum term of: 105 months in the custody of: N.C. DOC[.]" The trial court left unchecked boxes on the form indicating Defendant's sentence would begin consecutive to any other imposed sentences. The trial court also left unchecked the boxes on the reverse of the form in the section titled "ORDER OF COMMITMENT/APPEAL ENTRIES[,]" which would have either denoted notice of appeal of the judgment by Defendant or ordered "the sheriff or other qualified officer ... [to] cause the [D]efendant to be delivered ... to the custody of
 
 *395
 
 the agency named [in the Judgment]
 
 to serve the sentence imposed
 
 ..." (emphasis added).
 

 Following his sentencing in state court, judgment was entered against the Defendant in the Federal Case on 12 November 2009, sentencing him to concurrent sentences of 180 and 120 months in the custody of the United States Bureau of Prisons. Defendant began service of his federal sentence but, on 30 March 2016, the North Carolina Department of Public Safety provided a detainer action letter to the United States Department of Justice indicating a detainer was filed concerning Defendant's sentence on the State Charges.
 
 [3]
 
 The letter, contrary to the Judgment, stated that the Defendant's term of imprisonment for the State Charges was "to run consecutive."
 

 Upon learning of the detainer, Defendant filed an MAR on 20 July 2016, requesting that he "be adjudged to have served all his North Carolina time." At the MAR hearing, counsel for Defendant stated that he was not asking for jail credit towards the term of imprisonment imposed
 
 *351
 
 in the Judgment. Instead, counsel for Defendant stated he was seeking entry of a commitment order
 
 nunc pro tunc
 
 12 May 2009, the date of the Judgment, because no such order had been entered at that time as required by N.C. Gen. Stat. § 15A-1353(a). Defendant's counsel further reasoned that, because the statute stated "[u]nless otherwise specified, the date of the [commitment] order is the date service of the sentence is to begin[,]" N.C. Gen. Stat. § 15A-1353(a), Defendant's sentence under the Judgment should be calculated to have run beginning 12 May 2009.
 

 The trial court denied Defendant's motion by order entered 26 September 2016. Defendant filed a petition for writ of certiorari to this Court for review of the trial court's order, which was granted 29 December 2016.
 

 II.
 
 ANALYSIS
 

 A. State's Motion for Judicial Notice
 

 The State, by motion filed with its brief, requests this Court take judicial notice of the following documents from the Federal Case: (1) an indictment; (2) an arrest warrant; (3) an order of detention; (4) a waiver of detention hearing; (5) a superseding indictment; (6) a plea agreement; and (7) a motion and order continuing sentencing. We grant the State's motion.
 

 Our Rules of Evidence set forth certain specific requirements allowing for judicial notice in our state's trial courts. Rule 201(b) requires that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." N.C. Gen. Stat. § 8C-1, Rule 201(b) (2015). A trial court must take judicial notice under Rule 201 where it is "requested by a party and [the court is] supplied with the necessary information." N.C. Gen. Stat. § 8C-1, Rule 201(d) (2015).
 

 As for appellate courts, Rule 9 of the North Carolina Rules of Appellate Procedure states that our "review is solely upon the record on appeal, the verbatim transcript of proceedings, if one is designated, and any other items filed pursuant to this Rule 9." N.C. R. App. P. 9(a) (2017). However, "[a]ppellate courts may take judicial notice
 
 ex mero motu
 
 on 'any occasion where the existence of a particular fact is important ....' "
 
 Lineberger v. N.C. Dep't of Correction
 
 ,
 
 189 N.C. App. 1
 
 , 6,
 
 657 S.E.2d 673
 
 , 677 (2008) (quoting
 
 West v. G.D. Reddick, Inc.
 
 ,
 
 302 N.C. 201
 
 , 203,
 
 274 S.E.2d 221
 
 , 223 (1981) ). Facts subject to judicial notice are those
 
 *352
 
 "which are either so notoriously true as not to be the subject of reasonable dispute or 'capable of demonstration by readily accessible sources of indisputable accuracy[.]' "
 
 Lineberger
 
 ,
 
 189 N.C. App. at 6
 
 ,
 
 657 S.E.2d at 677
 
 (quoting
 
 West
 
 ,
 
 302 N.C. at 203
 
 ,
 
 274 S.E.2d at
 
 223 ).
 

 North Carolina law clearly contemplates that our courts, both trial and appellate, may take judicial notice of documents filed in federal courts. For example, the North Carolina
 
 *396
 
 Utilities Commission is permitted by statute to take judicial notice of "decisions of State and federal courts, ... public information and data published by official State and federal agencies ..., and such other facts and evidence as may be judicially noticed by justices and judges of the General Court of Justice."
 
 N.C. Gen. Stat. § 62-65
 
 (b) (2015). We have also held that questions relating to criminal custody and dates of incarceration may warrant the taking of judicial notice of such facts.
 
 See
 

 State v. Surratt
 
 ,
 
 241 N.C. App. 380
 
 , 385,
 
 773 S.E.2d 327
 
 , 331 (2015) ("[T]his court elects to take judicial notice of defendant's release date for the indecent liberties conviction .... We also take judicial notice of the fact that defendant was not actually released from incarceration on 24 September 1995.").
 

 The facts and documents introduced with the State's motion are "capable of demonstration by reference to a readily accessible source of indisputable accuracy."
 
 West
 
 ,
 
 302 N.C. at 203
 
 ,
 
 274 S.E.2d at 223
 
 . The federal court filings are all retrievable in the form provided by the State from Public Access to Court Electronic Records ("PACER")
 
 [4]
 
 and, with the exception of Defendant's motion to continue sentencing, they all bear file stamps from the Clerk of the U.S. District Court for the Eastern District of North Carolina or the signature of a district court judge. Further, they all display the file number referenced by Defendant in his brief and displayed on other federal filings already included in the record on appeal.
 

 The documents and the contents thereof also bear upon a fact critical to the disposition of this case: when and whether Defendant was in the custody of the State. Both parties' arguments reflect that the issue
 
 *353
 
 of State custody is material to the disposition of this appeal and, as set forth
 
 infra
 
 Part II.C., we agree. The documents provided therefore meet the requirements necessary to take judicial notice on appeal upon the State's motion.
 
 Lineberger
 
 ,
 
 189 N.C. App. at 6-7
 
 ,
 
 657 S.E.2d at 677-78
 
 (outlining the requirements for taking judicial notice on appeal but declining to do so where no motion for judicial notice was filed and the fact in question was not important to resolution of the appeal).
 

 Lastly, we note that there is no apparent prejudice to Defendant in taking judicial notice of these documents. Defendant did not oppose the State's motion to take judicial notice, as was his right under our Rules. N.C. R. App. P. 37(a) (2017). Nor did Defendant file a reply brief to the State's appellee brief, which relied on the documents in the motion to take judicial notice in arguing that Defendant's initial brief contained factual errors concerning custody. N.C. R. App. P. 28(h) (2017). Furthermore, both parties provided the MAR court with documents from the Federal Case at the hearing, and several such documents are already included in the record on appeal.
 
 [5]
 
 Given that the documents provided are subject to judicial notice and in the absence of any apparent prejudice to Defendant, we grant the State's motion and take judicial notice of the provided documents from the Federal Case.
 

 B. Standard of Review
 

 Defendant contends that this appeal is subject to
 
 de novo
 
 review, while the
 
 *397
 
 State argues abuse of discretion is the proper standard. The State is correct that, as a general matter, a denial of an MAR is subject to review under the abuse of discretion standard.
 
 State v. Elliott
 
 ,
 
 360 N.C. 400
 
 , 419,
 
 628 S.E.2d 735
 
 , 748 (2006). However, "[t]his Court reviews the trial court's conclusions of law in an order denying an MAR
 
 de novo
 
 ."
 
 State v. Martin
 
 ,
 
 244 N.C. App. 727
 
 , 734,
 
 781 S.E.2d 339
 
 , 344 (2016) (citing
 
 State v. Jackson
 
 ,
 
 220 N.C. App. 1
 
 , 8,
 
 727 S.E.2d 322
 
 , 329 (2012) ). Thus, "if the issues raised by Defendant's challenge to [the trial court's] decision to deny his [MAR] are primarily legal rather than factual in nature, we will essentially use a
 
 de novo
 
 standard of review in evaluating Defendant's challenges to [the court's] order."
 
 *354
 

 Jackson
 
 ,
 
 220 N.C. App. at 8
 
 ,
 
 727 S.E.2d at 329
 
 (first and third alteration in original) (internal citation and quotation marks omitted).
 

 Here, Defendant challenges the trial court's MAR order on legal, rather than factual grounds, asserting that N.C. Gen. Stat. § 15A-1353(a) requires the entry of a commitment order in this action and determines when his sentence for the State Charges begins to run.
 
 See, e.g.,
 

 State v. Hayes
 
 , --- N.C. App. ----, ----,
 
 788 S.E.2d 651
 
 , 652 (2016) ("issues of statutory construction are questions of law which we review
 
 de novo
 
 on appeal[.]" (internal citation omitted) ). Because resolution of Defendant's appeal requires interpretation of the statute in question to resolve whether denial of the MAR was proper, we employ
 
 de novo
 
 review.
 

 C. The Trial Court Erred in Denying Defendant's Request for Entry of a Commitment Order Nunc Pro Tunc Consistent With the Judgment
 

 N.C. Gen. Stat. § 15A-1353 governs orders of commitment upon sentences of imprisonment, which "remand[ ] a defendant to prison in order to carry out a judgment and sentence." Black's Law Dictionary (10th ed. 2014) (defining "Commitment Document"). Under the plain language of the statute, "[w]hen a sentence includes a term or terms of imprisonment, the court must issue an order of commitment setting forth the judgment. Unless otherwise specified in the order of commitment, the date of the order is the date service of the sentence is to begin." N.C. Gen. Stat. § 15A-1353(a).
 

 Defendant argues that the statute's language is mandatory, and requires entry of an order of commitment. We agree. "[O]rdinarily, the word 'must' and the word 'shall,' in a statute, are deemed to indicate a legislative intent to make the provision of the statute mandatory[.]"
 
 State v. House
 
 ,
 
 295 N.C. 189
 
 , 203,
 
 244 S.E.2d 654
 
 , 662 (1978). Thus, the statute's command that "the court
 
 must
 
 issue an order of commitment setting forth the judgment" mandates entry of such an order upon imposition of a term of imprisonment. N.C. Gen. Stat. § 15A-1353(a) (emphasis added).
 

 Here, the trial court entered its Judgment imposing a term of imprisonment on Defendant, but it failed to enter an order of commitment for N.C. DOC to take custody of Defendant for service of that term. Defendant requested entry of such an order at his MAR hearing, but his motion was denied. Because the trial court was required to enter a commitment order but did not, Defendant was entitled to the "other appropriate relief" of a commitment order entered
 
 nunc pro tunc
 
 19 May 2009 at his MAR hearing. N.C. Gen. Stat. § 15A-1417(a)(4) (2015).
 

 *355
 
 Defendant is incorrect, however, in asserting that his sentence should be calculated beginning 19 May 2009. The statute provides that "[u]nless otherwise specified in the order of commitment, the date of the order is the date service of the sentence
 
 is to begin
 
 [,]" not the date that the sentence "does begin" or "begins." N.C. Gen. Stat. § 15A-1353(a) (emphasis added). Indeed, we doubt that an order of commitment could conclusively establish the date that a term of imprisonment begins at all, as it is the judgment that authorizes imprisonment and sets forth its length, terms, and conditions. Our Supreme Court has held that:
 

 A valid judgment of a court of competent jurisdiction is the
 
 real and only authority
 
 for the lawful imprisonment of a person who pleads or is found guilty of a criminal offense. ... The purpose of a commitment is to advise the prison authorities of the
 
 *398
 
 provisions of the judgment. Since a commitment has no validity except that derived from the judgment, to the extent it fails to set forth or certify the judgment accurately the commitment is void and the judgment itself controls.
 

 In re Swink
 
 ,
 
 243 N.C. 86
 
 , 90,
 
 89 S.E.2d 792
 
 , 795 (1955) (emphasis added) (citation omitted);
 
 see also
 

 State v. McAfee
 
 ,
 
 198 N.C. 507
 
 , 508-09,
 
 152 S.E. 391
 
 , 392 (1930) ("The essential point of a judgment imposed in a criminal action is the punishment and the time when the sentence shall actually begin is not material because it is only directory.
 
 If for any cause the sentence is not executed at the time named the defendant may again be brought before the court and a new period may be prescribed
 
 ." (emphasis added) );
 
 State v. Jackson
 
 ,
 
 14 N.C. App. 579
 
 , 582,
 
 188 S.E.2d 539
 
 , 541 (1972) ("A valid judgment is the only authority for the lawful imprisonment of a person and when the commitment fails to set forth the judgment correctly it is void and the judgment itself controls." (citing
 
 Swink
 
 ,
 
 243 N.C. 86
 
 ,
 
 89 S.E.2d at
 
 792 ) ). Thus, if a judgment establishes that a term of imprisonment must be served in the custody of a particular State agency, it follows that such a term cannot begin until custody is actually remitted to that agency or its successor. As such, the commitment order's date setting forth when a term "is to begin," N.C. Gen. Stat. § 15A-1353(a), simply "advise[s]" the authorities as to when custody should be remitted to the designated custodial agency, and its terms cannot vary or depart from the provisions of the underlying judgment.
 
 Swink
 
 ,
 
 243 N.C. at 90
 
 ,
 
 89 S.E.2d at 795
 
 . This reading comports with another subsection of the same statute, which establishes that "[u]nless a later time is directed in the order of commitment, ... the
 
 *356
 
 sheriff must cause the defendant to be placed in custody of the agency specified in the judgment on the day service of [the] sentence is to begin or as soon thereafter as practicable." N.C. Gen. Stat. § 15A-1353(c) (2015).
 

 Our holding is consistent with our Supreme Court's decision in
 
 State v. Cockerham
 
 ,
 
 2 Ired. Law 204
 
 ,
 
 24 N.C. 204
 
 (1842). There, a defendant was sentenced to two months imprisonment "from and after 1 November next[,]" but was not actually taken into custody and imprisoned consistent with that language.
 

 Id.
 

 at 205
 
 ,
 
 24 N.C. at 205
 
 . After those two months had elapsed, the defendant was ordered taken into custody at the next term of court to serve his two month sentence.
 

 Id.
 

 at 204
 
 ,
 
 24 N.C. at 204
 
 . On appeal, our Supreme Court drew essentially the same distinction that we draw between modern judgments and orders of commitment, holding that "[t]he judgment is the penalty of the law, as declared by the court, while the direction, with respect to the time of carrying it into effect, is in the nature of an award of execution[.]"
 

 Id.
 

 at 205
 
 ,
 
 24 N.C. at 205
 
 . On such a distinction, and irrespective of the fact that the two months had elapsed, the Supreme Court held that "[u]pon the defendant appearing in court and his identity not being denied, and it being admitted that the sentence of the court had not been executed, it was proper to make the necessary order for carrying the sentence into execution."
 

 Id.
 

 at 205
 
 ,
 
 24 N.C. at 205
 
 .
 

 Here, the Judgment sentenced Defendant to a minimum of 80 months and maximum of 105 months imprisonment "in the custody of: N.C. DOC[.]" By the very terms of the Judgment, Defendant's sentence requires him to spend at least 80 months in the custody of the N.C. DOC, and such a term necessarily cannot begin to run until he is actually remitted into the agency's custody. Thus, while Defendant is entitled to a commitment order under N.C. Gen. Stat. § 15A-1353(a), neither the date of that order nor the delay in its entry can begin Defendant's sentence in contravention of the express terms of the Judgment.
 
 See
 

 McAfee
 
 ,
 
 198 N.C. at 508
 
 ,
 
 152 S.E. at 392
 
 ("Why a commitment was not issued promptly ... does not appear;
 
 but the delay cannot defeat the object of the prosecution or exempt the defendant from liability to punishment
 
 ." (emphasis added) );
 
 see also
 

 Swink
 
 ,
 
 243 N.C. at 90
 
 ,
 
 89 S.E.2d at
 
 795 ;
 
 Cockerham
 
 , 2 Ired. Law at 205,
 
 24 N.C. at
 
 205 ;
 
 Jackson
 
 ,
 
 14 N.C. App. at 582
 
 ,
 
 188 S.E.2d at 541
 
 . The date Defendant's sentence begins (or began) to run is therefore the date at which he is (or was) actually taken into custody by the N.C. DOC.
 

 Reviewing the record, transcripts, and the documents of which we take judicial notice, it
 
 *399
 
 appears Defendant was not remitted into the
 
 *357
 
 custody of the N.C. DOC, let alone State custody, at the time he was sentenced and the Judgment was entered or anytime thereafter. While Defendant was in State custody on the two dates he was arrested for the different State Charges, Defendant was released from custody on bond on the day following each arrest.
 
 See, e.g.,
 

 Burgwyn v. Hall
 
 ,
 
 108 N.C. 489
 
 , 490,
 
 13 S.E. 222
 
 , 222 (1891) ("[T]he defendant may, under an order of arrest duly obtained, be arrested and held in custody, unless he shall, as he may do in the way prescribed, give bail ....");
 
 State v. Howell
 
 ,
 
 166 N.C. App. 751
 
 , 753,
 
 603 S.E.2d 901
 
 , 903 (2004) (construing "release" as used in a statute within the article of the Criminal Procedure Act governing bail to mean " 'to set or make free' from the supervision and control of the court, as well as from imprisonment" (citation omitted) ). Defendant was next taken into custody by the federal government when he was arrested by an FBI agent on 29 September 2008. The federal government's custody of Defendant continued, as an order of temporary detention pending hearing was entered on 30 September 2008, and Defendant waived the subsequent detention hearing on 15 October 2008. Nothing in the record indicates Defendant was ever released from federal custody, and he did not contest this fact, introduced by the State in its brief and motion to take judicial notice, through a reply brief or opposition to the State's motion.
 

 Defendant's sole basis for arguing that he was in State custody at the time he was sentenced on the State Charges is a statement from the judge at sentencing that "[Defendant's] in custody." We are unpersuaded. First, the transcript of the sentencing hearing appears incomplete, as it begins
 
 in medias res
 
 rather than at the calling of Defendant's case. Second, the transcript failed to capture a bench conference that occurred immediately following this statement. Third, the statement does not disclose whose custody Defendant was in, and fourth, a state court judge cannot, by oral proclamation, place a defendant already in un-relinquished federal custody into state custody.
 
 See, e.g.,
 

 Ponzi v. Fessenden
 
 ,
 
 258 U.S. 254
 
 , 260-61,
 
 42 S.Ct. 309
 
 , 310-11,
 
 66 L.Ed. 607
 
 , 611 (1922) ("[A defendant] may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it. Such a waiver is a matter that addresses itself
 
 solely to the discretion of the sovereignty making it
 
 .... In the case at bar, the Federal District Court first took custody of Ponzi. ... Until the end of his term and his discharge,
 
 no state court could assume control of his body without the consent of the United States
 
 ." (citation omitted) (emphasis added) ). Thus, absent any indication that the federal
 
 *358
 
 government relinquished or waived custody of Defendant, the trial court was without authority to order the State to assume it.
 
 [6]
 

 Indeed, the record below shows that the State did not assume custody of Defendant. As noted by the Defendant, no order of commitment was ever entered directing the sheriff to take Defendant under his control and deliver Defendant to N.C. DOC. Nor did the N.C. DOC take Defendant into custody by other means between his sentencing and the time of the MAR hearing. At that hearing, the State introduced as an exhibit a certified copy of Defendant's "pen pack" maintained by the N.C. DOC, which shows Defendant was last in the agency's custody on 21 July 2006. Defendant's counsel acknowledged at the MAR hearing that the State did not assume custody at the time of sentencing, stating "[s]ometime in May of 2009 he was transferred from court here back to federal-to federal custody to await trial there." Because the evidence shows Defendant was never remitted into the custody of the N.C. DOC and his sentence cannot begin to run consistent with the Judgment until he is so remitted, we hold that Defendant's
 
 *400
 
 sentence for the State Charges had not begun to run at the time of the MAR hearing.
 

 Defendant argues that the result of our holding is contrary to the plea agreed to by Defendant and the State, as he pleaded guilty to an "active sentence." However, the designation of a sentence as active has no bearing on the issues raised by Defendant on appeal. The relevant definitional statute governing Defendant's sentencing defines "[a]ctive punishment" as "[a] sentence in a criminal case that requires an offender to serve a sentence of imprisonment and is not suspended." N.C. Gen. Stat. § 15A-1340.11 (2015). Such a sentence was imposed on Defendant by the Judgment, and he must serve it. Properly calculating when Defendant's service of that sentence begins is entirely unrelated to whether the sentence is active or suspended.
 

 Defendant cites
 
 Kiendra v. Hadden
 
 ,
 
 763 F.2d 69
 
 , 72-73 (2nd Cir. 1985), to support his argument that his sentence has already been served. We are not bound by federal circuit court decisions.
 
 See
 

 In re Truesdell,
 

 313 N.C. 421
 
 , 428-29,
 
 329 S.E.2d 630
 
 , 634-35 (1985). Also, Defendant's reliance on
 
 Kiendra
 
 is otherwise misplaced. The Fourth Circuit discussed but did not adopt
 
 Kiendra
 
 in
 
 *359
 

 United States v. Grant
 
 ,
 
 862 F.3d 417
 
 (4th Cir. 2017), when it upheld a district court's denial of a prisoner's request for credit towards a federal sentence.
 
 862 F.3d at 420-21
 
 ("We note at the outset of our analysis that we are not at all sure a federal common law right to credit for time erroneously spent at liberty currently exists. As the First Circuit has noted, legal developments in the decades since
 
 White
 
 [
 
 v. Pearlman
 
 ,
 
 42 F.2d 788
 
 (10th Cir. 1930),] cast some doubt on the current validity of the doctrine." (citation omitted) ). Finally, two other federal circuit courts have categorically rejected the argument that a defendant should be deemed to have served his sentence as of the date of sentencing due to a delay in commencement.
 
 Little v. Holder
 
 ,
 
 396 F.3d 1319
 
 , 1321-22 (11th Cir. 2005) ("[A] delay in the commencement of a sentence cannot, by itself, constitute service of that sentence." (citation omitted) );
 
 Leggett v. Fleming
 
 ,
 
 380 F.3d 232
 
 , 235 (5th Cir. 2004) ("[T]his court has expressly held that a prisoner is not entitled to a credit when there is merely a delay in the execution of one's sentence." (citations omitted) ).
 
 [7]
 

 Here, there is no indication that the federal government surrendered Defendant to State custody and the State refused to exercise it. Furthermore, the petitioner in
 
 Kiendra
 
 was committed at the time of his federal sentencing to federal custody, and that order was not followed; here, no commitment order was entered, and, even if it had been, it could not have contravened the Judgment's mandate that Defendant serve his sentence in the custody of N.C. DOC. Rather than frustrate the judgments of the state and federal courts in this case, our decision vindicates them. The state court ordered Defendant to serve his sentence in the custody of N.C. DOC prior to the imposition of any federal sentence, meaning it was neither consecutive nor concurrent to the
 
 *360
 
 as-yet non-existent federal sentence.
 
 [8]
 
 And North Carolina law
 
 *401
 
 does not allow time in federal custody to be credited towards a state sentence.
 
 See, e.g.,
 

 State v. Lewis
 
 ,
 
 231 N.C. App. 438
 
 , 447,
 
 752 S.E.2d 216
 
 , 222 (2013) ("Because no statute specifically authorizes credit for time spent in federal custody, the trial court had no discretion under the Structured Sentencing Act to reduce defendant's sentence for his time in federal custody."). Thus, the Judgment is effectuated by Defendant serving his sentence in N.C. DOC custody without consideration of the federal sentence. As to the federal sentence itself, the United States District Court for the Eastern District of North Carolina ordered that sentence "be served consecutively with any state charges the defendant is currently serving time for[,]" obviously evincing an intention that the federal sentence run separate and consecutive with any state sentence, such as the Judgment.
 

 III.
 
 CONCLUSION
 

 Defendant is entitled to the appropriate relief of an order of commitment entered
 
 nunc pro tunc
 
 19 May 2009, the date he was sentenced under the Judgment, and the trial court which initially sentenced Defendant, as well as the trial court presiding at his MAR hearing, erred in failing to do so contrary to a statutory mandate. N.C. Gen. Stat. § 15A-1353(a). However, the Judgment requires Defendant to serve a minimum of 80 months and maximum of 105 months imprisonment in the custody of the N.C. DOC, and his sentence cannot be said to run until he is remitted into the agency's custody. We therefore remand for entry of such an order of commitment, with the instruction that the order state Defendant's sentence is to begin on the date he is released from federal custody.
 

 REMANDED WITH INSTRUCTIONS.
 

 Judges BRYANT and DAVIS concur.
 

 [1]
 

 In 2012, the North Carolina General Assembly consolidated the North Carolina Department of Correction with several other state agencies to form the Department of Public Safety, which includes the "The Division of Adult Correction, which shall consist of the former Department of Correction." Current Operations and Capital Improvements Appropriations Act of 2011, ch. 145, sec. 19.1.(b),
 
 2011 N.C. Sess. Laws 535
 
 .
 
 See also
 
 N.C. Gen. Stat. §§ 143B-600 & 143B-630 (2017) (establishing the Department of Public Safety and creating the Division of Adult Correction and Juvenile Justice therein). Thus, we use "N.C. DOC" to refer to both the North Carolina Department of Corrections and its successor agency, the North Carolina Department of Public Safety, Division of Adult Correction and Juvenile Justice.
 

 [2]
 

 The State filed a motion to take judicial notice of public records contemporaneously with its brief. The motion requests this Court take judicial notice of various indictments, a warrant, and several orders filed and entered in the Federal Case. As set forth
 
 infra
 
 Part II.A., we grant the State's order and include facts contained in these records throughout our recitation of the procedural history of the case.
 

 [3]
 

 Defendant included the detainer action letter, but not the detainer itself, in the record on appeal.
 

 [4]
 

 PACER is "an electric public access service that allows users to obtain case and docket information online from federal appellate, district, and bankruptcy courts ...." PACER, Public Access to Court Electronic Records, https://www.pacer.gov/ (last visited 19 February 2018). The service "is available to anyone who registers for an account[,]"
 

 id.
 

 , and a PACER account permits attorneys and
 
 pro se
 
 parties to file documents directly with the federal court. Administrative Office of the U.S. Courts, PACER User Manual 24 (June 2017). It is "available 24 hours a day, seven days a week, including weekends and holidays[,]" and "provides real-time access to information entered into the court's database."
 
 Id.
 
 at 24-25.
 

 [5]
 

 Specifically, the judgment in the Federal Case was attached to Defendant's MAR and introduced as an exhibit at the MAR hearing. Defendant's counsel also provided at least two "packet[s] of documents" to the MAR court, but it is unclear from the transcript how many such packets were provided or what was in them. At the very least, Defendant's counsel's comments at the hearing demonstrate that one packet included a document showing that a detainer had been filed against Defendant. However, we are unable to determine from the record and transcripts whether all the documents provided by Defendant's counsel to the MAR court have been included in this appeal.
 

 [6]
 

 While Defendant was present in state court for entry of his plea and sentencing, this alone does not demonstrate a waiver of custody by the United States.
 
 See, e.g.,
 

 United States v. Evans
 
 ,
 
 159 F.3d 908
 
 , 912 (4th Cir. 1998) (noting that a writ of habeas corpus
 
 ad prosequendum
 
 allows a federal prisoner to appear in state court to face state criminal charges, but that the United States "does not relinquish its custodial authority over the prisoner when the prisoner is sent to the receiving jurisdiction").
 

 [7]
 

 The facts in
 
 Kiendra
 
 are also distinguishable. There, the petitioner was convicted of a federal crime, with the sentence to begin upon expiration of a state sentence he was then serving.
 
 763 F.2d at 70
 
 . The federal government filed a detainer with the state where the petitioner was imprisoned but, when the state authorities presented him to federal marshals, the marshals refused to accept him into their custody.
 

 Id.
 

 at 70
 
 . The petitioner was later arrested and convicted again in state court, which, aware of the unserved federal sentence, sentenced defendant to serve his state sentence in a federal penitentiary concurrent with the unserved federal sentence.
 

 Id.
 

 at 70-71
 
 . The state presented the petitioner to federal marshals for imprisonment on three more occasions, and the marshals refused custody each time.
 

 Id.
 

 at 71
 
 . However, once the petitioner had served his state sentence in state prison rather than the intended federal prison, the marshals took custody of the petitioner and imprisoned him in a federal penitentiary to serve his federal sentence.
 

 Id.
 

 at 71
 
 . The
 
 Kiendra
 
 court held that the petitioner should receive credit on his federal sentence running from the date he was first committed by the federal court, as holding otherwise would be contrary to the federal court's intention that the petitioner's sentence begin on the date he was originally committed and to the state court's intention that his state sentence run concurrently with the federal sentence.
 

 Id.
 

 at 72-73
 
 .
 

 [8]
 

 "When multiple sentences of imprisonment are imposed on a person
 
 at the same time
 
 or when a term of imprisonment is imposed on a person who is
 
 already subject to an undischarged term of imprisonment
 
 ,
 
 including a term of imprisonment in another jurisdiction
 
 , the sentences may run either concurrently or consecutively, as determined by the court." N.C. Gen. Stat. § 15A-1354 (2009) (emphasis added).