IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-167

Filed 17 December 2025

Wake County, No. 19CVS013093-910

SOUTHLAND NATIONAL INSURANCE CORPORATION in Liquidation, BANKERS LIFE INSURANCE COMPANY in Rehabilitation, COLORADO BANKERS LIFE INSURANCE COMPANY, in Rehabilitation, and SOUTHLAND NATIONAL REINSURANCE CORPORATION, in Rehabilitation, Plaintiffs,

v.

GREG E. LINDBERG, GLOBAL GROWTH HOLDINGS, LLC, EDWARDS MILL ASSET MANAGEMENT, LLC, NEW ENGLAND CAPITAL, LLC, and PRIVATE BANKERS LIFE AND ANNUITY CO., LTD., Defendants.

Appeal by defendants from orders entered 12 July 2024 and 29 July 2024 by Judge A. Graham Shirley II in Wake County Superior Court. Heard in the Court of Appeals 26 August 2025.

*Monica Langdon Jackson, for defendants-appellants.*

*Williams Mullen, by Wes J. Camden, Caitlin M. Poe, and Lauren E. Fussell, for plaintiffs-appellees.*

FLOOD, Judge.

Defendant Greg E. Lindberg, Defendant Global Growth Holdings, LLC ("Global Growth"), and Defendant New England Capital, LLC ("New England Capital") (collectively, "Defendants") appeal from two orders: first, the trial court's order entered on 12 July 2024 amending a modified temporary restraining order (the "Re-Modified TRO"), and second, the trial court's order entered on 29 July 2024

denying Defendants' motion to allow the limited receiver to approve transfers from Lindberg's borrower companies—or the Specified Affiliated Companies (the "SACs")—to fund expenses or obligations, "whether personal or business in nature," of Global Growth (the "Motion to Allow"). On appeal, Defendants contend the trial court erred by, first, amending the Modified TRO to extend beyond the specified scope of a memorandum of understanding that Defendants and Plaintiffs entered into (the "MOU"), and second, denying Defendants' Motion to Allow because the trial court's order interferes with the limited receiver's authority. Upon careful review, we affirm in part, dismiss in part, and remand for further proceedings.

## I. Factual and Procedural Background

The following factual and procedural background is derived in part from the facts set forth in this Court's prior opinion of *Southland Nat'l Ins. Corp. v. Lindberg*, 289 N.C. App. 378 (2023), issued upon Defendants Greg E. Lindberg, Global Growth Holdings, Inc. f/k/a Academy Association, Inc., and New England Capital, LLC's prior appeal to this Court.

*The Plan*

Southland National Insurance Corporation, Bankers Life Insurance Company, Colorado Bankers Life Insurance Company, and Southland National Reinsurance Corporation (collectively "Plaintiffs") are insolvent insurers who were purchased by Lindberg in 2014.

In 2014, Lindberg re-domesticated Plaintiffs to North Carolina in order to take advantage of this State's favorable regulations as to insurance companies' investments. Prior to this re-domestication, Lindberg, acting as owner of Plaintiffs, made a special agreement with former North Carolina Commissioner of Insurance, Wayne Goodwin, allowing Lindberg to invest up to forty percent of Plaintiffs' assets into affiliated business entities. Lindberg then invested up to forty percent of Plaintiffs' money into the purchase of other, non-insurance companies, also owned by Lindberg. Simply put, Lindberg created a scheme in which he caused $1.2 billion held for Plaintiffs' policyholders to be invested into other non-insurance companies that he also owned or controlled.

In November 2016, Wayne Goodwin lost his seat as Commissioner of Insurance to Mike Causey, who then reduced the cap on affiliated investments from forty percent to ten percent. Lindberg struggled to untangle his affiliated investments and, as the deadline for diversification drew near, the North Carolina Department of Insurance ("NCDOI") grew concerned that there would be a "mismatch between investments and policyholder liabilities." In other words, because Lindberg had invested so much of Plaintiffs' money into affiliated non-insurance companies, NCDOI worried Plaintiffs might experience a shortfall on their obligation to pay individual policyholders.

To address this problem, in May 2019, the parties agreed to negotiate a restructuring of the affiliated business entities' obligations. On 27 June 2019, the parties entered into, *inter alia,* the MOU, wherein Lindberg agreed that, on or before 30 September 2019, the SACs would be placed under a New Holding Company ("NHC") governed by an independent board, charged with protecting Plaintiffs' policyholders. Importantly, Article II, Section I of the MOU limited the restructuring to the SACs and excluded affiliated companies that were non-SAC entities. On the same day the parties entered into the MOU, Lindberg agreed to have Plaintiffs enter into rehabilitation. During the period of rehabilitation and upon execution of the MOU, Defendants had either direct or indirect control over most of the SACs and the authority to contribute those entities to NHC.

*The Breach*

On 1 October 2019, Plaintiffs filed suit against Defendants for breach of the MOU and fraud, alleging Lindberg had failed to make the SACs subsidiaries of NHC on or before 30 September 2019. Plaintiffs requested specific performance of the MOU, compensatory damages, and punitive damages. Plaintiffs also filed a Motion for Preliminary Injunction and sought a Temporary Restraining Order (the "TRO") against Defendants. The trial court approved the TRO, which prohibited "Defendants, or any third-party acting in concert with them," from, *inter alia*, selling, encumbering, or otherwise devaluing the SACs. The TRO also contained restrictions

on, not just the SACs, but "any affiliated company" because Lindberg had created a complex web of companies and investments through which he controlled the flow of capital—which included "multiple tiers of operating and holding companies; loans that had been syndicated and repackaged, then transferred several times; underlying loan agreements and sellers' notes; equity equivalence agreements; and third-party financing agreements." *Id.* at 392. Finally, the TRO restrained Defendants from dissipating their own assets. On 7 October 2019, with the consent of the parties, the trial court entered a Consent Extension of the TRO, extending its duration until the trial court ruled on Plaintiffs' Motion for a Preliminary Injunction, for which there has yet to be a hearing.

*The Trial Court's Initial Order and the Parties' Initial Appeal*

After a bench trial held by the trial court from 21 June to 30 June 2021, the trial court entered a judgment in favor of Plaintiffs, and ordered specific performance of the MOU, but did not order compensatory or punitive damages. On 26 May 2022, the trial court entered an Amended Judgment and Order to correct clerical errors. On 13 June 2022, Defendants appealed to this Court from the Amended Judgment and Order. On 21 June 2022, Plaintiffs cross-appealed on the narrow issue of whether the trial court erred in failing to award fraud damages. On 20 June 2023, this Court issued its opinion, affirming the trial court's award of specific performance of the

MOU and directing the trial court to enter an immediate award of damages in favor of Plaintiffs. *Id.* at 394.

After this Court issued its opinion, Defendants petitioned the Supreme Court for discretionary review. On 13 December 2023, the Supreme Court granted Defendants' petition for discretionary review in part, solely on the issue of whether Plaintiffs' reliance on Defendants' fraudulent representations was reasonable. *See Southland Nat'l Ins. Corp. v. Lindberg*, 385 N.C. 610 (2023). Our Supreme Court heard oral arguments on 24 October 2024, and on 17 October 2025, the Supreme Court concluded "that Defendants' petition for discretionary review was improvidently allowed by order on 13 December 2023." *Southland Nat'l Ins. Corp. v. Lindberg*, 920 S.E.2d 504 (2025) (*per curiam*).

*The Modified TRO*

On 15 April 2024, Plaintiffs filed a Motion to Modify the TRO and Appoint a Receiver, alleging Defendants had violated the terms of the TRO. On 22 April 2024, the trial court held a hearing on Plaintiffs' Motion to Modify the TRO and Appoint a Receiver. After hearing arguments from both parties, the trial court orally granted Plaintiffs' motions, entered a written order (the "Receivership Order") appointing Bill Janvier (the "Receiver") "to serve as a limited receiver over [Global Growth], effective immediately [and] to monitor [Global Growth's] compliance with the [Modified] TRO[,]" and stated that a written order further setting forth the terms of the Modified

TRO and the Receiver's duties and obligations would follow.

On 10 May 2024, the trial court entered an order modifying the TRO (the "Modified TRO") and detailing the Receiver's powers and duties. The trial court stated that the TRO's restrictions would continue to apply, and imposed additional restrictions on Defendants, "and any entity directly or indirectly controlled by Defendants[,]" including a restraint on engaging in transactions of funds from the SACs over $10,000, without prior court approval. The Modified TRO also provided that the Receivership Order was still in place and ordered Defendants to provide "the Receiver with notice of any proposed transaction involving cash, cash equivalents, or assets in excess of $10,000 at least 72 hours in advance of any such transaction."

On 18 June 2024, the Receiver submitted a report to the trial court identifying various transactions Global Growth made in May 2024 that potentially violated the Modified TRO including: a transfer of $633 million of preferred equity in Global Growth; a payment of over $500,000 of Lindberg's personal expenses; and a payment of over $1 million to a non-SAC company controlled by Lindberg. This matter came on for hearing on 25 June 2024, and after hearing arguments from Defendants, Plaintiffs, and the Receiver, the trial court stated it was going to further amend the Modified TRO and the Receivership Order.

Before the trial court entered an order amending the Modified TRO and the Receivership Order, on 2 July 2024, Defendants asked the Receiver to approve "a

request for a $500,000 distribution from the ARM trust to" Global Growth. The following day, the Receiver responded via email to Defendants' request, stating:

> I'm not certain that this type of transaction falls within the scope of the modification to the TRO announced by [the trial court] -- I'll need to see the written order (which has not yet been entered) to know for sure. That said, if given the power to authorize this transaction, I would approve it. If the proposed order has not yet been submitted, I would urge the parties to do so quickly.

On 12 July 2024, Defendants filed the Motion to Allow, attaching the Receiver's email and asking the trial court to give the Receiver the additional authority of approving transfers from the SACs to fund expenses or obligations, "whether personal or business in nature," of Global Growth.

Seven minutes after Defendants filed the Motion to Allow, the trial court entered the Re-Modified TRO, amending the Modified TRO and modifying the Receivership Order. In the Re-Modified TRO, the trial court stated that, due to Defendants' violations of the Modified TRO in May 2024, the threshold amount for restrained transactions in the Modified TRO was lowered to $5,000, and that the restriction applies to transfers by Lindberg or Global Growth, even if the relevant funds originate from non-SAC entities.

On 17 July 2024, the Receiver filed a response to Defendants' Motion to Allow, stating he would be unlikely to approve the requested transactions due to Defendants' "numerous flagrant and repeated violations of the TRO[.]" The Receiver also asked

the trial court to hold a status hearing to discuss Defendants' non-compliance with the Receivership Order and "specific inappropriate suggestions that the Receiver's expenses will be paid contingent upon the Receiver approving certain transfers."

The trial court heard the Motion to Allow and held a status hearing on 18 July 2024. During the hearing, counsel for Defendants acknowledged the Re-Modified TRO did not have a "personal expense authorization[,]" but argued there was confusion about whether the payment of personal expenses violated the TRO: Defendants thought the payment of personal expenses did not violate the TRO, but the Receiver thought paying personal expenses did violate the TRO. Defendants attempted to persuade the trial court into "reconsidering the order it did enter and entering [Defendants'] version instead." The Receiver asserted that even if he was given the additional authority as requested by Defendants in the Motion to Allow, he would "be extremely hesitant to use it" because, due to "Defendants repeatedly violat[ing] [the c]ourt's order[,]" he was "pretty confident [the money] will be misused[.]" On 29 July 2024, the trial court entered an order denying Defendants' Motion to Allow (the "29 July 2024 Order").

Defendants timely appealed from the Re-Modified TRO and the 29 July 2024 Order.

## II. **Jurisdiction**

As an initial matter, we note the Re-Modified TRO and the 29 July 2024 Order

are interlocutory orders because they do not dispose of all pending matters before the trial court. *See Veazey v. City of Durham*, 231 N.C. 357, 362 (1950) ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.") "Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725 (1990). Under N.C.G.S. § 7A-27, however, a party may appeal an interlocutory order if the interlocutory order "[a]ffects a substantial right." N.C.G.S. § 7A-27(b)(3)(a) (2023).

"[T]he appellant has the burden of showing this Court that the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits." *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380 (1994). "Whether an interlocutory appeal affects a substantial right is determined on a case-by-case basis[,]" *Grant v. High Point Reg'l Health Sys.*, 172 N.C. App. 852, 853 (2005), in which "it is usually necessary to consider the particular facts of a case and the procedural context in which the interlocutory order arose[,]" *Barnes v. St. Rose Church of Christ, Disciples of Christ*, 160 N.C. App. 590, 591 (2003). In determining whether an immediate review of an interlocutory appeal is warranted, this Court applies a two part test: (1) "that the right in question qualifies as substantial"; and (2) "that, absent immediate appeal, the right will be

lost, prejudiced or less than adequately protected by exception to entry of the interlocutory order." *Barnes v. Kochhar*, 178 N.C. App. 489, 497 (2006) (citation and internal quotation marks omitted).

Defendants assert, and Plaintiffs do not contest, the Re-Modified TRO and the 29 July 2024 Order deprive Defendants of a substantial right to use and control their assets, and that right will be lost absent immediate appellate review. To support their argument, Defendants cite *Schout v. Schout*, where this Court held that the trial court's interlocutory order affected a substantial right of the defendant because the order "jeopardize[d the] defendant's right to maintain the assets for [the] plaintiff's educational needs." 140 N.C. App. 722, 726 (2000). Similar to *Schout*, this Court has held that "[a]n appellant's right to use and control its assets is a substantial right that warrants immediate review when that right is prohibited during the pendency of case resolution." *SED Holding, LLC v. 3 Star Props., LLC*, 246 N.C. App. 632, 635 (2016); *see Scottish Re Life Corp. v. Transamerica Occidental Life Ins. Co.,* 184 N.C. App. 292, 294–95 (2007) (holding that an order for provisional remedies affected a substantial right because of "the large amount of money at issue[,] . . . the fact that the trial court impinged appellant's right to the use and control of those assets, and the unavoidable and lengthy delays, acknowledged by both parties").

Here, the Re-Modified TRO and the 29 July 2024 Order affect Defendants' substantial right of using and controlling their assets. While the Re-Modified TRO

was issued "to protect the rights and interests of Plaintiffs and Plaintiffs' policyholders[,]" Defendants have shown that they lack full control over their assets because the Re-Modified TRO prohibits any expense exceeding $5,000 absent court approval, which—in effect—freezes Defendants' entire financial operations as Defendants must submit piecemeal requests to the trial court every time they seek to transfer money in excess of $5,000. The process of seeking court approval any time Defendants wish to use their assets has led to substantial delays, such one instance where it took twenty-seven days for the Receiver to grant a prior request to approve a payment of over $5,000. Accordingly, Defendants' substantial right to use and control their assets is affected by the Re-Modified TRO and the 29 July 2024 Order, and this Court has jurisdiction to review Defendants' appeal from the Re-Modified TRO and the 29 July 2024 Order.

### III. <u>Motion for Judicial Notice</u>

Next, we address Defendants' Motion for Judicial Notice. Defendants request that we take judicial notice of two public records filed in the North Carolina state courts: first, the Motion to Dissolve the TRO and Motion to Discharge Limited Receiver and Special Master, and second, the 31 December 2024 Order granting in part and denying in part the Limited Receiver's Motion for Authority to Recover Transfers made in Violation of the TRO.

Pursuant to Rule 37 of the North Carolina Rules of Appellate Procedure, a

party may request this Court to take judicial notice of matters outside of the record on appeal. *See Coiner v. Cales*, 135 N.C. App. 343, 346 (1999) ("[A] request that this Court take judicial notice of certain material must be made by motion pursuant to [N.C.R. App.] P. 37."). Defendants request that we take judicial notice of the Motion to Dissolve and the 31 December 2024 Order because they provide "record support for significant facts of" Defendants' appeal. Specifically, Defendants assert that the Motion to Dissolve contains documents showing Defendants fully complied with the terms of the MOU by transferring all their interests in the SACs on 11 October 2024, and the 31 December 2024 Order reverses the Re-Modified TRO. We deny Defendants' Motion for Judicial Notice for two reasons.

First, the Motion to Dissolve and the contents therein are not matters that are subject to judicial notice. This Court may take judicial notice of "the public records of other courts within the state judicial system[,]" *see State v. Thompson*, 349 N.C. 483, 497 (1998), as well as "a fact which is either so notoriously true as not to be the subject of reasonable dispute or is capable of demonstration by readily accessible sources of indisputable accuracy[,]" *see West v. G. D. Reddick, Inc.*, 302 N.C. 201, 203 (1981). Our Supreme Court has described what kind of matters of which a court may properly take judicial notice:

> A matter is the proper subject of judicial notice only if it is 'known,' well[-]established and authoritatively settled. Matters of which a court will take judicial notice are necessarily uniform or fixed and do not depend on

> uncertain testimony. A disputable matter cannot be classified as common knowledge and will not be judicially recognized.

*Hughes v. Vestal*, 264 N.C. 500, 506 (1965) (citation omitted).

Here, the Motion to Dissolve, and the content therein, is—by its very nature—argumentative and the subject of dispute. Indeed, the parties question in their briefs to this Court the effect of this Motion: on one hand, Defendants assert the Motion to Dissolve shows the SACs were transferred to NHC in October 2024 pursuant to the MOU; on the other hand, Plaintiffs assert the legal effect of the Motion to Dissolve will be contested at the trial court level. This Court has previously denied taking judicial notice of certain documents that are disputable in nature. *See In re Hackley*, 212 N.C. App. 596, 601–02 (2011) (taking judicial notice of a recorded deed because it was "capable of accurate and ready determination[,]" but holding we could not take judicial notice of "emails, letters, and affidavits" because the accuracy of the documents were "subject to question"). Where the Motion to Dissolve does not contain facts that are "well established and authoritatively settled," such matters cannot be classified as common knowledge, and this Court will not judicially recognize such facts. *See Hughes*, 264 N.C. at 506.

Second, the 31 December 2024 Order does not bear upon a fact crucial to the disposition of this appeal. It is well-established that this Court "may take judicial notice *ex mero motu* on 'any occasion where the existence of a particular fact is

important . . . .'" *Lineberger v. N.C. Dep't of Correction*, 189 N.C. App. 1, 6 (2008) (quoting *West*, 302 N.C. at 203); *see also State v. Watson*, 258 N.C. App. 347, 352 (2018) (taking judicial notice of several documents, including a motion and order continuing sentencing, because the content within the documents contained "a fact critical to the disposition" of the appeal).

Here, Defendants contend the 31 December 2024 Order contains language specifically excluding the regulation of the non-SAC entities by the Receiver. While the 31 December 2024 Order denied the motion as to non-SAC entities "[f]or the avoidance of doubt," it appears the trial court denied the motion, not on the merits, but because the motion concerned the subject matter of a pending appeal. Our review of the 31 December 2024 Order, however, does not reveal any fact indicating the trial court reversed or amended the Re-Modified TRO. The fact that the Receiver can renew his motion to recover from transfers made in violation of the TRO after this appeal is decided has no bearing on whether the trial court erred in modifying the Modified TRO or whether the trial court impermissibly interfered with the Receiver's authority. Therefore, because the 31 December 2024 Order has no bearing on our decision in this case, we decline to take judicial notice of the 31 December 2024 Order. *See Lineberger*, 189 N.C. App. at 6.

Accordingly, we deny Defendants' request to take judicial notice of the Motion to Dissolve and the 31 December 2024 Order.

## IV. <u>Analysis</u>

On appeal, Defendants argue the trial court erred by (A) modifying the TRO to extend beyond the MOU's specified scope and (B) denying Defendants' Motion to Allow on 29 July 2024. We discuss each argument, in turn.

### A. Modification of the Modified TRO

Defendants first argue the trial court erred by modifying the TRO to extend beyond the MOU's specified scope. Specifically, Defendants assert that Article II, Section I of the MOU makes it clear that the MOU does not govern any of the non-SAC entities, nor does it govern Lindberg's other personal assets, and the Re-Modified TRO contradicts the plain language of the MOU because it "purports to restrain Lindberg and all of his businesses from making any transaction over $5,000 without court approval."

Generally, a temporary restraining order will be issued as "an ancillary remedy for the purpose of preserving the status quo or restoring a status wrongfully disturbed pending the final determination of the action." *Hutchins v. Stanton*, 23 N.C. App. 467, 469 (1974); *see Seaboard Air Line R. Co. v. Atl. Coast Line R. Co.*, 237 N.C. 88, 94 (1953) (stating that a temporary restraining order will be issued "to prevent an injury being committed or seriously threatened"). Rule 65 of the North Carolina Rules of Civil Procedure governs the issuance and extension of a temporary restraining order. *See* N.C.R. Civ. P. 65(b); *see also Taylor v. Centura Bank*, 124 N.C. App. 661, 663

(1996) ("All [temporary restraining orders] must be obtained pursuant to N.C.R. Civ. P. 65."). When the trial court grants a temporary restraining order, the temporary restraining order must "set forth the reasons for its issuance; [] be specific in terms; [] describe in reasonable detail, and not by reference to the complaint or other document, the act or acts enjoined or restrained[.]" N.C.R. Civ. P. 65(d). A temporary restraining order may be extended before the original duration expires for a longer period of time, if the restrained party consents to the extension of the temporary restraining order or if good cause is shown. *See* N.C.R. Civ. P. 65(b). Moreover, Rule 62(c) authorizes a trial court to, in its discretion, modify a temporary restraining order during the pendency of an appeal:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court[,] in its discretion[,] may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

*See* N.C.R. Civ. P. 62(c).

In their principal brief to this Court, Defendants fail to cite a single legal authority regarding the trial court's authority to modify a temporary restraining order. Under our Rules of Appellate Procedure, an appellant's brief must include "[a]n argument, to contain the contentions of the appellant with respect to each issue presented[,]" and within the body the appellant must include "citations of the

authorities upon which the appellant relies." N.C.R. App. P. 28(b)(6). Moreover, "it is the appellant's burden to show error occurring at the trial court, and it is not the role of this Court to create an appeal for an appellant or to supplement an appellant's brief with legal authority or arguments not contained therein." *Thompson v. Bass*, 261 N.C. App. 285, 292 (2018). Consequently, when an appellant presents an argument but fails to cite applicable legal authority and thus violates Rule 28(b)(6), the argument will be taken as abandoned. *See K2HN Constr. NC, LLC v. Five D Contractors, Inc.*, 267 N.C. App. 207, 213 (2019) ("This Court has routinely held an argument to be abandoned where an appellant presents argument without such authority and in contravention of [Rule 28(b)(6)]."); *see also Thompson*, 261 N.C. App. at 292 (deeming the issue on appeal as abandoned "[b]ecause [the] plaintiff [] failed to submit any meaningful argument as to how the trial court erred").

Here, Defendants' entire argument in their principal brief to this Court solely focused on how the trial court should have construed the MOU and tailored the Re-Modified TRO to the terms of the MOU. The issue before the trial court was not an issue of contract interpretation; rather, the issue was whether Plaintiffs were entitled to a modification of the Modified TRO. While Defendants cite several cases involving the interpretation of contracts to support their argument, Defendants failed to cite any legal authority in tailoring the terms of relief under the TRO. Since Defendants had the burden of showing the trial court erred, but failed to comply with Rule

28(b)(6), we are unable to determine if the trial court erred by entering the Re-Modified TRO and modifying the Modified TRO to extend beyond the MOU's specified scope. *See Thompson*, 261 N.C. App. at 292.

We note that, in their reply brief, Defendants pivot their argument and assert—for the first time on appeal—that the trial court had no authority to "issue blanket injunctions on matter unrelated to injunctions[,]" the TRO is "overly restrictive" and "violates due process[,]" and the TRO is not based on concrete and adjudicated rights. Although Defendants cite authority to support these new issues, Defendants waived these issues by failing to assert them in their principal brief to this Court. *See State v. Dinan*, 233 N.C. App. 694, 698–99 (2014) ("[A] reply brief is not an avenue to correct the deficiencies contained in the original brief."); s*ee also Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 708 (2009) ("By raising his condition precedent argument for the first time in his reply brief, [the appellant] has frustrated the adversarial process by depriving [the appellee] of the opportunity to respond to his argument."). Moreover, while Plaintiffs, in their brief to this Court, generally discussed the trial court's authority to enter a temporary restraining order under Rule 65 and Rule 62(c), Defendants' arguments in their reply brief raise entirely new arguments that exceed "the framework for the matters to be decided on appeal." *See Animal Prot. Soc. of Durham, Inc. v. State*, 95 N.C. App. 258, 269 (1989) (declining to address the appellant's newly-raised constitutional argument because, although the

appellee generally discussed "cases upholding the constitutionality" of the statutes, the appellant could not use her reply brief to raise new matters). As such, we decline to address Defendants' arguments regarding the modification of the Modified TRO. *See Hardin*, 199 N.C. App. at 708.

Therefore, because Defendants, in their principal brief to this Court, cite no applicable legal authority to support their claim that may allow this Court to determine whether the trial court erred by modifying the Modified TRO to extend beyond the MOU's specified scope, this issue is deemed abandoned and dismissed.

## B. Limited Receiver

Defendants lastly argue the trial court erred by denying Defendants' Motion to Allow. Specifically, Defendants argue "[t]he trial court disregarded the purpose of appointing a limited receiver[,]" and the trial court's denial of the Motion to Allow "was an unwarranted interference with [the Receiver]'s discretion and authority under the [10 May 2024] Receivership [O]rder." We disagree.

This Court has never addressed the issue of whether a trial court has impermissibly interfered with the authority of a limited receiver. As such, we find a discussion relating to the powers and duties of a receiver germane to our analysis.

A receivership is used only as a means to reach an end of completing justice between the parties. *See Lowder v. All Star Mills, Inc.*, 309 N.C. 695, 704 (1983) ("The ultimate end of the receivership is to enable the court to accomplish, so far as

practicable, complete justice between the parties before it."). As defined by the North Carolina Commercial Receivership Act, a receivership is the case in which the court appoints a receiver, and the receiver "takes possession of, manages, or disposes of the debtor's property." N.C.G.S. § 1-507.20(b)(26) (2023). Generally, a receivership is "ancillary to some equitable relief," *Murphy v. Murphy*, 261 N.C. 95, 101 (1964), and will be ordered only when "there is no other safe and expedient remedy[,]" *Neighbors v. Evans*, 210 N.C. 550, 554 (1936). After all, "[t]he judicial creation of a receivership is a harsh, drastic, and extraordinary remedy." *Lowder*, 309 N.C. at 701.

"A receiver may be appointed by a trial court both pursuant to statute and the trial court's inherent authority." *Barnes*, 178 N.C. App. at 499. Pursuant to N.C.G.S. § 1-502, a trial court may appoint a receiver "after judgment" for various reasons, including, "to carry the judgment into effect[,]" or "to preserve [the property] during the pendency of an appeal[.]" N.C.G.S. §§ 1-502(2), (3) (2023). "Indeed, a trial court's decision whether to appoint a receiver is ordinarily reviewed under an abuse of discretion standard." *Haarhuis v. Cheek*, 261 N.C. App. 358, 368 (2018), *writ denied, review denied,* 372 N.C. 298 (2019).

The receiver has multiple duties, including the duty to act in conformity with the court's orders, and the duty to "act in the best interests of the receivership and the receivership property." N.C.G.S. § 1-507.28(c)(5). The extent of a receiver's powers, however, depends on whether the trial court ordered a limited receivership

or a general receivership. *See* N.C.G.S. § 1-507.28(b) (enumerating ten additional powers a general receiver has if the trial court ordered a general receivership). A limited receiver has the powers as set forth in N.C.G.S. § 1-506.28(a), as well as any powers specifically conferred to the limited receiver by a court order, rule, or statute. *Id.* The trial court has the authority to limit or expand the powers of the receiver, *see* N.C.G.S. § 1-507.28(d) and may, "[a]t any time, . . . order a general receivership to be converted to a limited receivership and a limited receivership to be converted to a general receivership[,]" N.C.G.S. §§ 1-507.23 (2023).

While the receiver is entrusted with a considerable amount of responsibility and authority, the receiver does not have unbridled authority. The receiver, as a court-appointed person, becomes "the court's agent, [] subject to the court's direction," who will "take possession of, manage, control, and, if authorized . . . dispose of receivership property." N.C.G.S. § 1-507.20(b)(25). At all times during the receivership, "[t]he receiver is an officer of the court, and is amenable to its instruction in the performance of his duties; and the custody of the receiver is the custody of the law." *See Lambeth v. Lambeth*, 249 N.C. 315, 321 (1959) (citation omitted). Once a trial court appoints a receiver, the trial court has broad powers to:

> [D]irect the receiver and determine all controversies relating to the receivership or receivership property, wherever located, including, without limitation, authority to determine all controversies relating to the collection, preservation, improvement, disposition, and distribution of receivership property, and all matters otherwise arising in

> or relating to the receivership, the receivership property, the exercise of the receiver's powers, or the performance of the receiver's duties.

N.C.G.S. § 1-507.22.

Here, the trial court's order denying Defendants' motion was not, as Defendants contend, an "overreach of judicial authority[,]" but rather, an exercise of its exclusive authority to direct the Receiver and resolve matters relating to the receivership. When the trial court appointed the Receiver, the trial court specifically limited the Receiver's powers to the those conferred in the Modified TRO, which included, *inter alia*, the power "to seek and obtain instruction from the [c]ourt with respect to any matter relating to the receivership property, the exercise of the Receiver's powers, or the performance of the Receiver's duties[.]"

Due to confusion between the parties, however, the Receiver used its court-given authority to request the trial court to hold a status hearing and discuss the Receiver's authority to approve certain transactions. *See* N.C.G.S. § 1-507.28(a)(4) ("[A] receiver, whether general or limited, shall have . . . [t]he power to seek and obtain instruction from the court with respect to any matter relating to the receivership property, the exercise of the receiver's powers, or the performance of the receiver's duties."). Thus, when the matter came on for hearing on 18 July 2024, the trial court was subsequently faced with, as Defendants argued, a proposition to reconsider the authority it had already given the Receiver. In other words, the trial

court was faced with a controversy relating to the receivership and the disposition of the receivership property, which it had the "exclusive authority" to determine. *See* N.C.G.S. § 1-507.22.

While the trial court ultimately denied Defendants' proposition to expand the Receiver's powers, the trial court had the vested authority to limit or expand the powers of the Receiver at any time, *see* N.C.G.S. §§ 1-507.23, 1-507.28(d), and when the trial court declined to extend the Receiver's authority, the trial court's determination was based on the Motion to Allow, the Receiver's response to the Motion to Allow, and the arguments of counsel. On the other hand, the Receiver, as an officer of the court and subject to its instruction in the performance of his duties, had the duty to act in conformity with the trial court's order—not vice-versa. *See* N.C.G.S. § 1-507.28; *see also Lambeth*, 249 N.C. at 321.

Therefore, because the trial court had the authority to modify the Receiver's authority, the trial court did not err in denying Defendants' Motion to Allow.

### V. <u>Conclusion</u>

Upon careful review, we conclude Defendants abandoned their argument asserting the trial court erred by modifying the TRO to extend beyond the MOU's specified scope, where Defendants failed to cite appropriate authority to allow this Court to determine whether the trial court erred; thus, Defendants' argument is dismissed. We also conclude the trial court did not err by denying Defendants' Motion

to Allow, where the trial court had statutory authority to limit the Receiver's powers at any time throughout the receivership. Accordingly, we affirm in part, dismiss in part, and remand for further proceedings.

AFFIRMED IN PART; DISMISSED IN PART; AND REMANDED.

Judges TYSON and HAMPSON concur.